**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PHILIP MORRIS USA INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  08-028-SLR |
| | ) | |
| TABOCA AS and NORDIC AMERICAN | ) | |
| SMOKELESS INC. f/k/a TABOCA USA INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT NORDIC AMERICAN SMOKELESS INC.'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
OR, ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT**

ASHBY & GEDDES
Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
Tiffany Geyer Lydon  (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Of Counsel:*                                              *Attorneys for Plaintiff*

Christopher P. Foley
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-3315
(571) 203-2700

Roberta L. Horton
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5161

Dated:  May 2, 2008

{00213950;v1}

# TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................1

II.   SUMMARY OF ARGUMENT ...................................................................1

III.  STATEMENT OF FACTS .........................................................................3

      A.   PM USA's Rights in the TABOKA Mark ..........................................3

      B.   Defendant Taboca AS's Unsuccessful Challenge of PM USA's TABOKA
           Application..................................................................................4

      C.   Defendants Have Willfully Used the TABOCA Name and Mark in U.S.
           Commerce in Violation of PM USA's Rights ........................................4

IV.   ARGUMENT ..........................................................................................5

      A.   Nordic American's Motion to Dismiss Should Be Denied Because PM
           USA Has Alleged Sufficient Wrongdoing by Nordic American..........................5

           1.   In Light of the Liberal Notice Pleading Standard, Courts Rarely
                Grant Motions to Dismiss ...............................................................5

           2.   Because Nordic American and Taboca AS Are, for Practical
                Purposes, One and the Same Entity, the Allegations in the First
                Amended Complaint Are Properly Asserted against Both Entities ............7

           3.   Nordic American Is Liable for Taboca USA Inc.'s Wrongful
                Conduct As Alleged in the First Amended Complaint ...............................8

           4.   Contrary to Nordic American's Assertions, PM USA's Allegations
                Are Not "Speculative" and Give Nordic American Sufficient
                Notice of Its Claims against the Company .................................................10

      B.   Nordic American Has Improperly and Prematurely Moved to Convert Its
           Motion to Dismiss into One for Summary Judgment ...........................................12

           1.   Nordic American's Motion for Summary Judgment Is Premature
                Because PM USA Has Not Yet Had the Opportunity to Take Any
                Discovery ......................................................................................12

           2.   Discovery Is Needed to Ascertain Additional Information Relevant
                to PM USA's Claims ......................................................................13

      C.   In the Event the Court Considers the Motion, It Should Be Denied
           Because Genuine Issues of Material Fact Remain.................................................14

1.    There Is a Genuine Issue of Material Fact As to Whether Nordic American Is Using the TABOCA Trade Name and Mark in U.S. Commerce .................................................................................................15

D.    The Court Should Deny the Motion and Provide PM USA with Injunctive Relief and Damages .............................................................................................18

V.    CONCLUSION.................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................................................12, 15

*Apollo Distrib. Co. v. Jerry Kurtz Carpet Co.*,
696 F. Supp. 140 (D.N.J. 1988) ...........................................................................18

*Basic Fun, Inc. v. X-Concepts, LLC*,
157 F. Supp. 2d 449 (E.D. Pa. 2001) ...................................................................18

*Bell Atl. Corp. v. Twombly*,
127 S. Ct. 1955 (2007).......................................................................................6, 11

*Big Apple BMW, Inc. v. BMW of N. Am., Inc.*,
974 F.2d 1358 (3d Cir. 1992)...............................................................................14

*Bowen Eng'g v. Estate of Reeve*,
799 F. Supp. 467 (D.N.J. 1992) ...........................................................................9

*Brennan v. Nat'l Tel. Directory Corp.*,
850 F. Supp. 331 (E.D. Pa. 1994) ........................................................................10

*Brug v. Enstar Group, Inc.*,
755 F. Supp. 1247 (D. Del. 1991).........................................................................12

*Burger King Corp. v. Weaver*,
33 F. Supp. 2d 1037 (S.D. Fla. 1998) ..................................................................19

*CMM Cable Rep. Inc. v. Ocean Coast Properties Inc.*,
48 F.3d 618 (1st Cir. 1995)...................................................................................19

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)........................................................................................12, 15

*Century 21 Real Estate Corp. v. Lendingtree, Inc.*,
425 F.3d 211 (3d Cir. 2005)..............................................................................9, 18

*Cleary v. Boston Sci. Corp.*,
2006 U.S. Dist. LEXIS 66567 (E.D.N.Y. Sept. 18, 2006)................................13

*Country Floors, Inc. v. P'Ship Composed of Gepner & Ford*,
930 F.2d 1056 (3d Cir. 1991)...............................................................................13

*Erickson v. Pardus*,
127 S. Ct. 2197 (2007).................................................................................5, 6, 10

*Expediters Int'l of Wash., Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*,
995 F. Supp. 468 (D.N.J. 1998) ...........................................................................14

*Hill v. Der*,
     521 F. Supp. 1370 (D. Del. 1981)................................................................6

*Jersey Cent. Power & Light Co. v. State of N.J.*,
     772 F.2d 35 (3d Cir. 1985)...................................................................19

*Kent v. U.S. Post Office*,
     2006 U.S. Dist. LEXIS 3549 (D.N.J. Jan. 1, 2006) ..............................6

*Kounelis v. Sherrer*,
     2005 WL 2175442 (D.N.J. Sept. 6, 2005) ...........................................11

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*,
     176 F.3d 669 (3d Cir. 1999).................................................................9

*Melo v. Hafer*,
     912 F.2d 628 (3d Cir. 1990).................................................................12

*Metallgesellschaft AG v. Foster Wheeler Energy Corp.*,
     143 F.R.D. 553 (D. Del. 1992) .............................................................12

*Morse v. Lower Merion Sch. Dist.*,
     132 F.3d 902 (3d Cir. 1997)...................................................................5

*Nat'l Customer Eng'g, Inc. v. Lockheed Martin Corp.*,
     43 U.S.P.Q.2d 1036 (C.D. Cal. 1997)...................................................16

*Nat'l Geographic Soc'y v. Conde Nast Publ'ns, Inc.*,
     687 F. Supp. 106 (S.D.N.Y. 1988)........................................................19

*Ospina v. Dep't of Corr.*,
     749 F. Supp. 572 (D. Del. 1990)...........................................................12

*Philadelphia Elec. Co. v. Hercules, Inc.*,
     762 F.2d 303 (3d Cir. 1985)...................................................................9

*Phillips v. County of Allegheny*,
     515 F.3d 224 (3d Cir. 2008)...................................................................6

*Planned Parenthood Fed'n of Am., Inc. v. Bucci*,
     1997 WL 133313 (S.D.N.Y. Mar. 24, 1997) ........................................16

*Primepoint, L.L.C. v. Primepay, Inc.*,
     2008 WL 576907 (D.N.J. Feb. 29, 2008) ..............................................13

*Scheuer v. Rhodes*,
     416 U.S. 232 (1974)...........................................................................6, 11

*Shaboon v. Duncan*,
     252 F.3d 722 (5th Cir. 2001) .................................................................15

*Site Pro-1 Inc. v. Better Metal LLC*,
     506 F. Supp. 2d 123 (E.D.N.Y. 2007) ...................................................16

*Trans Pac. Ins. Co. v. Trans-Pac. Ins. Co.*,
    136 F.R.D. 385 (E.D. Pa. 1991) .................................................................7, 14

*United States v. W. T. Grant Co.*,
    345 U.S. 629 (1953) ..........................................................................................18

*Wilkerson v. New Media Tech. Charter Sch., Inc.*,
    2008 U.S. App. LEXIS 7526 (3d Cir. Apr. 9, 2008) ..........................................6

## STATUTES AND RULES

15 U.S.C. § 1125(a)(1)(A) ..........................................................................................15

15 U.S.C. § 1127 ........................................................................................................16

Fed. R. Civ. P. 8(a) ......................................................................................................6

Fed. R. Civ. P. 8(e) ......................................................................................................6

Fed. R. Civ. P. 9(b) ......................................................................................................6

Fed. R. Civ. P. 12(b)(6) ........................................................................................1, 5, 6

Fed. R. Civ. P. 56(c) ..................................................................................................14

Fed. R. Civ. P. 56(f) ..................................................................................................12

## OTHER AUTHORITIES

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
    (4th ed. 2006) .........................................................................................16, 17

5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure,
    Civil 2D § 1349 (1990) ......................................................................................6

{00213950;v1}

Plaintiff Philip Morris USA Inc. ("PM USA" or "Plaintiff") submits the following Memorandum in Opposition to Defendant Nordic American Smokeless Inc.'s ("Nordic American" or "Defendant") Motion to Dismiss Plaintiff's First Amended Complaint or, Alternatively, Motion for Summary Judgment ("Motion").

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff PM USA filed its First Amended Complaint (D.I. 3) ("Amended Complaint") on March 19, 2008.  The Amended Complaint alleges that Defendants willfully have infringed Plaintiff's TABOKA trademark and engaged in unfair competition and related violations under federal, state, and common law based on their past and current use of the confusingly similar TABOCA trade name and mark.

Defendant Nordic American has moved to dismiss the Amended Complaint or, alternatively, for summary judgment.  The Motion should be denied because PM USA has properly pled the legal and factual basis for each of the causes of action in the Amended Complaint such that Nordic American has fair notice of the claims against it; Nordic American's motion is premature because the parties have not yet had an opportunity to take any discovery; and there are genuine issues of material fact that preclude summary judgment.

## II.    SUMMARY OF ARGUMENT

1.    In its supporting Memorandum (D.I. 7) ("Mem."), Nordic American makes two arguments.  First, it contends that the Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) as to Nordic American because the allegations do not provide "fair notice" of PM USA's claims against this company and, thus, are merely "speculative."  (Mem. at 6, 7.) Nordic American asserts that the Amended Complaint effectively refers to Defendants collectively, without describing Nordic American's allegedly infringing activities.  Second, Nordic American argues in the alternative that summary judgment is proper because Nordic American "indisputably is not using the TABOCA trade name or mark in U.S. commerce."  (*Id.* at 10.)  Neither argument has merit and, therefore, Nordic American's Motion should be denied in its entirety.

1

2.    Even though Nordic American contends, on the basis of self-serving statements by its CEO, Darren Quinn, that Nordic American and Taboca AS are "separate corporations" (*id.* at 3), PM USA sufficiently has alleged, and through discovery will show, that these companies are essentially one and the same and are jointly liable for the unlawful conduct alleged in the Amended Complaint.  Moreover, Nordic American's mere name change does not absolve it from liability for infringement of PM USA's TABOKA trademark and unfair business practices by its predecessor, Taboca USA Inc.  Indeed, Nordic American glosses over all of PM USA's allegations of past infringement by Taboca AS and Taboca USA Inc.  Simply ignoring the problem, however, does not make it go away.

3.    Similarly, Nordic American asks PM USA and the Court, as the basis for summary judgment, blindly to take its word, without the benefit of any discovery, that it is not using the TABOCA name and mark in U.S. commerce:

> The Declaration of Darren Quinn indisputably establishes that Nordic American is not using the TABOCA trade name or mark in U.S. commerce. . . ."; "Nordic American is entitled to judgment as a matter of law" because PM USA "cannot produce" "specific evidence to support its position that Nordic American is using the TABOCA trade name or mark in U.S. commerce.

(Mem. at 11.)  The law is clear, however, that summary judgment should not be granted before the parties have had the opportunity to conduct discovery on all relevant issues.  Nordic American imposes a heightened pleading standard on PM USA that far exceeds the standard established by the Federal Rules and that requires PM USA to prove factually intensive claims before discovery has even begun.  Nordic American's alternative motion for summary judgment is premature and should be denied.

4.    Even if the Court were to consider Nordic American's alternative motion for summary judgment, it should deny the Motion because several genuine issues of material fact remain.  For example, the parties dispute whether Nordic American is in fact a separate company from Taboca AS and whether Nordic American currently is using, or is planning to use, the

TABOCA name in U.S. commerce.  In light of these genuine issues of material fact, the Court should deny Nordic American's Motion in its entirety.

## III.    STATEMENT OF FACTS

Plaintiff PM USA is a Virginia corporation that sells smokeless tobacco products ("snus") under the TABOKA trademark in the United States.  (Compl. ¶¶ 2, 11.)  Defendant Taboca AS is a Norwegian company that purports to manufacture, market, and sell Swedish snus for Swedish, Norwegian, and American consumers.  (*Id.* ¶ 3.)  Defendant Nordic American, which, until only a few months ago, conducted business under the corporate name "Taboca USA Inc.," is an affiliate of Taboca AS that manufactures and markets Swedish snus.  (*Id.* ¶ 4.)

Taboca AS and Nordic American are managed and controlled by the same two individuals, both of whom reside in the United States:  Darren Quinn, the CEO of Taboca AS and the President and CEO of Nordic American, and Richard Cutler, the Executive Vice President for Business Development for Taboca AS and the Executive Vice President of Nordic American.  (*Id.* ¶¶ 15(a), (d); Declaration of Darren Quinn (attached to D.I. 7) ¶ 2 ("Since 2007, I have been the President and Chief Executive Officer of Nordic American Smokeless Inc."); Declaration of Roberta Horton ("Horton Decl.") ¶ 6, Ex. 1 (press release quoting Richard Cutler, the "Executive Vice President" at Nordic American).)

### A.    PM USA's Rights in the TABOKA Mark

On May 5, 2005, PM USA filed an intent-to-use application (Serial No. 78/623,680) in the United States Patent and Trademark Office ("USPTO") to register the mark TABOKA for, among other things, tobacco, raw or manufactured, chewing tobacco, and snuff tobacco, in International Class 34.  (Compl. ¶ 8.)  The filing of PM USA's application establishes constructive use of the mark as of May 5, 2005, and gives PM USA nationwide priority as of that date.  (*Id.* ¶ 9.)  The USPTO approved PM USA's application for TABOKA on May 4, 2006, and, on June 27, 2006, the application was published for opposition.  (*Id.* ¶ 10.)  PM USA began selling its TABOKA smokeless tobacco products in the United States in July 2006.  (*Id.* ¶ 11.)

**B.    Defendant Taboca AS's Unsuccessful Challenge of PM USA's TABOKA Application**

Despite the fact that Defendants never manufactured or sold tobacco products under the TABOCA mark in the United States prior to PM USA's May 5, 2005 constructive use date, on August 28, 2006, Defendant Taboca AS filed a Notice of Opposition with the Trademark Trial and Appeal Board (the "Board") against PM USA's Application Serial No. 78/623,680 for TABOKA, asserting prior common law rights in TABOCA through various alleged "pre-sales" activities.  (*Id.* ¶ 13.)  On February 7, 2007, PM USA filed a motion for summary judgment with the Board on the ground that Defendants could not establish, as a matter of law, priority of use in the term TABOCA before the May 5, 2005 filing date of PM USA's application to register the TABOKA mark.  (*Id.* ¶ 14.)  The Board granted PM USA's motion on December 18, 2007, and dismissed the opposition proceeding with prejudice.  (*Id.*)  The Board held that Taboca AS had failed to establish use of TABOCA as a trade name before PM USA's priority date.  (*Id.*)  The USPTO issued a Notice of Allowance for PM USA's TABOKA mark on April 22, 2008.  (Horton Decl. ¶ 11, Ex. 2.)

**C.    Defendants Have Willfully Used the TABOCA Name and Mark in U.S. Commerce in Violation of PM USA's Rights**

After PM USA's priority filing date of May 5, 2005 for the TABOKA mark, Defendants took specific measures to develop and use the confusingly similar TABOCA designation as a trade name and mark in connection with the marketing, manufacturing, and sale of their smokeless tobacco products in the United States.  (Compl. ¶ 15.)  For example, Taboca AS hired two U.S. businessmen -- CEO, Darren Quinn, and Executive Vice President For Business Development, Richard Cutler -- to manage and develop the company's business under the TABOCA trade name from within United States.  (*Id.* ¶ 15(a), (d).)  According to Taboca AS's press release announcing the hiring of Richard Cutler, he is "responsible for creating a foundation for the successful launch and continued development of Taboca's smokeless tobacco business in North America."  (*Id.*, Ex. B.)

Taboca AS also incorporated a U.S. subsidiary under the name "Taboca USA Inc." in Delaware.  (*Id.* ¶ 15(e).)  Using the "Taboca" name, Taboca USA Inc. filed five trademark applications with the USPTO for various marks in connection with smokeless tobacco.  (*Id.* ¶ 15(f).)

In addition, Taboca AS entered into a Strategic Relationship Agreement with R.J. Reynolds on June 9, 2006, which called for R.J. Reynolds to provide distribution and manufacturing services in the United States for Taboca AS's smokeless tobacco products sold under the TABOCA name.  (*Id.* ¶ 15(b).)  A June 12, 2006 press release announcing the Strategic Relationship Agreement between Taboca AS and R.J. Reynolds stated that Taboca AS intended to begin offering smokeless tobacco products in the United States under the TABOCA name within the next 12 months (*i.e.*, by July 2007).  (*Id.* ¶ 15(c).)

With full knowledge of PM USA's prior rights in the TABOKA mark, Defendants currently are selling TABOCA snus, through various Internet websites, to U.S. consumers, including those in Delaware, in direct competition with PM USA's TABOKA smokeless tobacco products.  (*Id.* ¶¶ 17–18, 20.)

In January 2008, one week after PM USA filed the initial Complaint in this matter, Taboca USA Inc. changed its corporate name to Nordic American.  (*Id.* ¶ 4.)

## IV.  ARGUMENT

### A.  Nordic American's Motion to Dismiss Should Be Denied Because PM USA Has Alleged Sufficient Wrongdoing by Nordic American

#### 1.  In Light of the Liberal Notice Pleading Standard, Courts Rarely Grant Motions to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6), the court is "required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").  "The issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 2008 U.S. App. LEXIS 7526, at *4 (3d Cir. Apr. 9, 2008) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

For this reason, courts have held that "motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are granted only in the rarest of circumstances." *Hill v. Der*, 521 F. Supp. 1370, 1390 (D. Del. 1981); *accord Kent v. U.S. Post Office*, 2006 U.S. Dist. LEXIS 3549, at *2 (D.N.J. Jan. 1, 2006); 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, Civil 2D § 1349 at 192–93 (1990) (motions to dismiss should be "granted *sparingly* and with caution in order to make certain that plaintiff is not improperly denied a right to have his claim adjudicated on the merits") (emphasis added). The United States Supreme Court has explained that a complaint cannot be "dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 n.8 (2007).

Under Rule 8 of the Federal Rules of Civil Procedure, pleadings should be limited to "a short and plain statement of the claim," which "must be construed so as to do justice." Fed. R. Civ. P. 8(a), (e). The Supreme Court's decision in *Twombly* reaffirmed that Rule 8 "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests, and [reaffirmed] that this standard does not require detailed factual allegations." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal quotation marks omitted); *see also Erickson*, 127 S. Ct. at 2200 ("[s]pecific facts are not necessary; the [Complaint] need only give the defendant fair notice of what the . . . claim is and grounds upon which its rests") (citation omitted).[1]

---

[1] Nordic American asserts, without any legal support, that Lanham Act cases "seem to require heightened scrutiny." (Mem. at 8.) None of PM USA's claims under Section 43(a) of the Lanham Act or related Delaware laws, however, require heightened scrutiny under Rule 9(b) or otherwise.

Under these well-established standards, PM USA has alleged a sufficient factual and legal basis for each of its causes of action and has given fair notice to both Defendants of their alleged wrongdoing.  Nordic American's Motion therefore should be denied.

> **2.    Because Nordic American and Taboca AS Are, for Practical Purposes, One and the Same Entity, the Allegations in the First Amended Complaint Are Properly Asserted against Both Entities**

Nordic American claims that PM USA's allegations against all "Defendants" are "speculative with respect to Nordic American" and do not "put Nordic American on notice of the claims against it."  (Mem. at 2, 6.)  In truth, Nordic American is just shifting all the blame for the unlawful conduct alleged in the Amended Complaint to Taboca AS to absolve itself of any responsibility.  (Mem. at 1 ("[A]ll of the factual allegations of the Complaint are directed only to Taboca AS, leaving no basis for any claim against Nordic American."); 2 ("[T]he factual allegations that are made against all 'Defendants' are speculative with respect to Nordic American."); 9 (PM USA is "[a]ttempting to piggyback claims against Nordic American onto factual allegations made only against Taboca AS. . . .").)

As PM USA's allegations make clear, however, Plaintiff believes that *both* Nordic American and Taboca AS are responsible for the infringing conduct alleged in the Amended Complaint and, for that reason, has referred to them collectively as "Defendants."  "The law is clear that multiple defendants may be joined in one trademark infringement action, and that all who induced or participated in unlawful acts of infringement may be liable."  *Trans Pac. Ins. Co. v. Trans-Pac. Ins. Co.*, 136 F.R.D. 385, 389 (E.D. Pa. 1991) (permitting the plaintiff to join as parties the defendant's affiliated companies, all of which were controlled by one man, because the plaintiff had "asserted facially valid [trademark] claims against the additional defendants" on the basis of both direct and derivative liability theories).

Although Nordic American would have the Court believe that it is a separate company from Taboca AS (Mem. at 3), PM USA's allegations and Defendants' own admissions make clear that Nordic American and Taboca AS are, for all practical purposes, one and the same.  Specifically, the following undisputed allegations and admissions, without limitation,

demonstrate that Nordic American and Taboca AS are closely affiliated, operated from within the United States by the same individuals, and engaged in the same type of business:

- Nordic American is an affiliate of Taboca AS that manufactures and markets Swedish snus.  (Compl. ¶ 4; Mem., Ex. B (Nordic American's press release announcing its corporate name change states that it "is an affiliate of the Norwegian snus company Taboca A/S").);

- Nordic American and Taboca AS both manufacture and market Swedish snus. (Compl. ¶¶ 3, 4 & Ex. B ("Taboca A/S . . . is a marketer of premium snus tobacco products."); Mem., Ex. B (Nordic American press release stating that it is "a smokeless tobacco company, whose quality products are based on the Swedish smokeless manufacturing process (snus)").);

- Darren Quinn is the CEO of *both* Nordic American and Taboca AS.  (Declaration of Darren Quinn ¶ 2 ("Since 2007, I have been the President and Chief Executive Officer of Nordic American Smokeless Inc."); Compl., Ex. B (press release issued by Taboca AS that quotes Darren Quinn, "CEO" of Taboca AS); *see also* Compl. ¶ 15(a) (alleging that Darren Quinn is the CEO of Taboca AS).);

- Richard Cutler is the Executive Vice President for Business Development of Nordic American and the Executive Vice President of Taboca AS.  (Compl. ¶ 15(d), Ex. B; Horton Decl., Ex. 1.)

- Taboca AS's leading officers -- the CEO, Darren Quinn, and the Executive Vice President for Business Development, Richard Cutler -- both reside in and manage and control the company from the United States.  (Compl. ¶¶ 15(a), (d), Ex. B.); and

- Taboca USA Inc. was a U.S. subsidiary of Taboca AS (*id*. ¶ 15(e)).

PM USA need not parse out each and every allegation against Nordic American because it sufficiently alleges that *both* Defendants are jointly liable for the trade name and trademark infringement, unfair competition, and related claims alleged in the Amended Complaint.  PM USA has provided Nordic American with ample notice of the legal claims against it and the factual basis for those claims.

    **3.     Nordic American Is Liable for Taboca USA Inc.'s Wrongful Conduct As Alleged in the First Amended Complaint**

Nordic American relies upon its name change -- a week after PM USA filed the initial Complaint in this matter -- from "Taboca USA Inc." to "Nordic American Smokeless Inc." to avoid being held responsible for its wrongful conduct as set forth in the Amended Complaint. (Compl. ¶ 4; Mem., Ex. B.)  This belated concession to PM USA's prior rights in the TABOKA

mark does not, however, insulate Nordic American from liability for acts of trade name and trademark infringement and unfair competition that occurred *prior* to its name change. Nor does it render moot PM USA's request for injunctive relief and damages against Nordic American. *See, e.g.*, *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 217 (3d Cir. 2005) ("Furthermore, were we to hold that LT's voluntary cessation of the alleged infringing activities rendered the case moot, this would potentially mean that LT would 'simply be free to return to [its] old ways after the threat of a lawsuit had passed.'") (citations omitted).

The law is clear that, as a successor-in-interest to Taboca USA Inc., Taboca AS's former subsidiary (Compl. ¶ 15(e)),[2] Nordic American is liable for Taboca USA Inc.'s past infringing activities. Nordic American's arguments to the contrary are a transparent attempt to elevate form over content, a position that has been repeatedly rejected by courts in this Circuit and elsewhere. As the Third Circuit has noted, in determining issues of successor liability, "[i]t is the duty of the court to examine the substance of the transaction to ascertain its purpose and true intent." *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 310 (3d Cir. 1985) (citation omitted).

To the extent Nordic American contends that the change from "Taboca USA Inc." to "Nordic American" was more than a cosmetic transformation, that does not determine whether Nordic American is liable for trade name and trademark infringement, unfair competition, and the related claims in this matter. It is well-established that liability can still be imposed on a successor corporation. *Bowen Eng'g v. Estate of Reeve*, 799 F. Supp. 467, 487–88 (D.N.J. 1992). Questions of successor liability are highly fact-specific and require extensive discovery, and thus are inappropriate for determination on a motion to dismiss or on summary judgment prior to the initiation of discovery. *See, e.g.*, *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 678 (3d Cir. 1999) ("However, successorship liability, where applicable, is imposed only after a full hearing with specific attention given to the details of the

---

[2] Although Nordic American claims it is not a subsidiary of Taboca AS (Mem. at 3), it does not deny PM USA's allegation that *Taboca USA Inc.* was a subsidiary. (Compl. ¶ 15(e).) This is a clear example of Nordic American capitalizing on its corporate name change to avoid liability in this suit.

arrangements between the parties and full findings of fact that the parties have had an opportunity to address."); *Brennan v. Nat'l Tel. Directory Corp.*, 850 F. Supp. 331, 340 (E.D. Pa. 1994) ("Obviously, any determination of this issue will be factual, and therefore we cannot properly consider the issue at this point in time." (on a motion to dismiss)).

> **4.    Contrary to Nordic American's Assertions, PM USA's Allegations Are Not "Speculative" and Give Nordic American Sufficient Notice of Its Claims against the Company**

PM USA's Amended Complaint properly sets forth sufficient facts to give Nordic American full and fair notice of what PM USA's claims are and the grounds upon which those claims rest. *See Erickson*, 127 S. Ct. at 2200 ("[s]pecific facts are not necessary; the [Complaint] need only give the defendant fair notice of what the . . . claim is and grounds upon which its rests"). For example, PM USA has pled the following facts, which, for purposes of this Motion, the Court must deem to be true:

- Since PM USA's May 5, 2005 priority filing date for the TABOKA mark, Defendants have taken specific measures to develop and use the confusingly similar TABOCA designation as a trade name and mark in connection with the marketing, manufacturing, and sale of their smokeless tobacco products inside the United States. (Compl. ¶ 15.)

- On April 25, 2007, Taboca AS incorporated a U.S. subsidiary under the name "Taboca USA Inc." in the State of Delaware. (*Id.* ¶ 15(e).)

- On May 16, 2007, Taboca USA Inc. filed five trademark applications with the USPTO for various marks in connection with smokeless tobacco. (*Id.* ¶ 15(f).) This constitutes sufficient use in commerce for purposes of an infringement action. See *infra* at 16–17.

- The Board conclusively determined that Taboca AS has *no* prior rights in the TABOCA trade name and mark. In flagrant disregard of the Board's judgment, however, Defendants are now publicly using the confusingly similar TABOCA name and mark in the United States in connection with their smokeless tobacco products. (*Id.* ¶ 17.)

- Indeed, upon information and belief, Defendants are selling TABOCA smokeless tobacco products to U.S. consumers, including within Delaware, in direct competition with PM USA's TABOKA smokeless tobacco products. (*Id.* ¶ 18.)

- Even after the Board ruled that Taboca AS has *no* prior rights in the TABOCA mark, Defendants publicly began using the TABOCA trade name in the United States in connection with competing smokeless tobacco products and, upon information and belief, are selling Swedish-made smokeless tobacco under the TABOCA mark to U.S. customers. (*Id.* ¶ 20.)

- Defendants are not now, nor have they ever been, authorized or licensed to use the TABOCA mark in the United States. (*Id.* ¶ 21.)

- Defendants' use of a trade name and mark that is virtually identical to PM USA's TABOKA mark in connection with the exact same type of product (smokeless tobacco) is likely to cause consumer confusion or mistake, or to deceive consumers into thinking that a connection, affiliation, sponsorship, or association exists between PM USA and Defendants and/or that PM USA endorses, sponsors, or is otherwise affiliated with Defendants' products. (*Id.* ¶ 22.)

- Defendants' continued use of a trade name and mark that is virtually identical to PM USA's TABOKA mark in connection with smokeless tobacco products threatens to misappropriate the goodwill associated with PM USA's TABOKA mark. (*Id.* ¶ 23.)

- Upon information and belief, Defendants have profited from their wrongful conduct, including, without limitation, by selling smokeless tobacco under the TABOCA mark to U.S. consumers who are confused into believing that Defendants and/or their TABOCA products are endorsed and sponsored by, or otherwise affiliated, connected, or associated with PM USA and its TABOKA product. (*Id.* ¶ 24.)

Nordic American's suggestion that PM USA must take the additional step of *proving* its allegations at this early stage in the litigation is plainly misguided. (Mem. at 6–9.) The Federal Rules do not require that a plaintiff *prove* its claims in the complaint. Indeed, the Supreme Court recognized the distinction between "facts" and "proof" in *Twombly*: "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual *proof* of those *facts* is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 127 S. Ct. at 1965 (quoting *Scheur*, 416 U.S. at 236) (emphasis added).

These factual allegations unquestionably put Nordic American on "fair notice" of PM USA's claims and, if proven true, give rise to trade name and trademark infringement, unfair competition, and attorney fees. As such, they clearly pass muster under the liberal notice pleading standard. *See Kounelis v. Sherrer*, 2005 WL 2175442, at *5 (D.N.J. Sept. 6, 2005) (rejecting individual defendants' argument that the complaint failed adequately to identify their specific actions and holding "[i]t may be true, as [defendants] contend that [they] had no personal involvement in the [alleged incident] and should not be held liable, but this is irrelevant when examining the sufficiency of the Complaint itself").

**B.    Nordic American Has Improperly and Prematurely Moved to Convert Its Motion to Dismiss into One for Summary Judgment**

**1.    Nordic American's Motion for Summary Judgment Is Premature Because PM USA Has Not Yet Had the Opportunity to Take Any Discovery**

A motion for summary judgment is premature when, as here, the parties have not yet conducted discovery. The Supreme Court repeatedly has admonished that premature motions for summary judgment should be denied if the nonmoving party has not had an adequate opportunity to take discovery. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) ("Summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition."). Rule 56(f) of the Federal Rules of Civil Procedure permits a court to deny a motion for summary judgment or to continue the hearing on the motion until the nonmoving party has had an opportunity to obtain full discovery when the nonmoving party has been "'railroaded' by a premature motion for summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); Fed. R. Civ. P. 56(f).

Because summary judgment should not be granted until the nonmoving party has had the opportunity to take discovery on the issues presented by the motion, courts in the Third Circuit routinely refuse prematurely to convert a motion to dismiss into one for summary judgment, as Nordic American urges this Court to do. "Summary judgment cannot be entered unless the nonmoving party has been given the opportunity to pursue discovery in connection with the issues addressed by the summary judgment motion." *Metallgesellschaft AG v. Foster Wheeler Energy Corp.*, 143 F.R.D. 553, 559 n.8 (D. Del. 1992); *see also Melo v. Hafer*, 912 F.2d 628, 634 (3d Cir. 1990); *Brug v. Enstar Group, Inc.*, 755 F. Supp. 1247, 1251 (D. Del. 1991); *Ospina v. Dep't of Corr.*, 749 F. Supp. 572, 574 (D. Del. 1990) (refusing to convert motion to dismiss into motion for summary judgment where no discovery had taken place and, thus, "the parties [we]re in no position to present all material pertinent to a motion for summary judgment").

Moreover, summary judgment is particularly inappropriate in fact-intensive trademark cases like this one. "Failure to strictly observe the principles governing summary judgment becomes particularly significant in a trademark or tradename action, where summary judgments

are the exception." *Country Floors, Inc. v. P'Ship Composed of Gepner & Ford*, 930 F.2d 1056, 1062–63 (3d Cir. 1991); *Primepoint, L.L.C. v. Primepay, Inc.*, 2008 WL 576907, at *17 (D.N.J. Feb. 29, 2008) ("in trademark matters, [the court] should not be hasty to grant summary judgment").

Because Defendant's motion for summary judgment would have this Court decide several in-depth questions of fact without the benefit of discovery, it must be denied as premature. Moreover, and as detailed below, most of the facts central to this case are disputed. They cannot, therefore, support a motion for summary judgment.

### 2.    Discovery Is Needed to Ascertain Additional Information Relevant to PM USA's Claims

Before PM USA adequately can respond to the factual assertions Nordic American makes in its Motion, it must be afforded the opportunity take discovery on the issues presented therein. (*See* Horton Decl. ¶ 2 (stating that PM USA has not yet had the opportunity to conduct discovery on the issues presented in Nordic American's Motion).) Significant gaps exist in the information available to PM USA at this time, particularly with respect to facts about which Nordic American has sole knowledge. *See Cleary v. Boston Sci. Corp.*, 2006 U.S. Dist. LEXIS 66567, at *10 (E.D.N.Y. Sept. 18, 2006) ("[I]t is axiomatic that a defendant cannot prevail on summary judgment where it has sole knowledge of the facts and plaintiff has had no opportunity for discovery."). By way of example only, PM USA disputes the following "facts," which are ripe areas for discovery:

- "Nordic American is not using its former TABOCA trade name, and has no plans or desire to revert to, promote or otherwise use in commerce such trade name." (Mem. at 3 (citing Quinn Decl. ¶ 4).)

- "Nordic has no plans or desire to sell any TABOCA brand products." (*Id.* (citing Quinn Decl. ¶ 9).)

- "Nordic American has never produced, distributed, sold or offered for sale any smokeless tobacco products anywhere in the world, either prior to or since its corporate name change." (*Id.* (citing Quinn Decl. ¶ 5).)

- "Nordic American has not in the past had, and currently does not have, any involvement or affiliation with either of the two internet web pages . . . attached to the Complaint. . . ." (*Id.*)

- "Nordic American and Taboca AS are separate corporations, that are separately capitalized, operate independently in different locations in different countries, with different overall directors, officers and employees, and different overall shareholders." (*Id.*)

- "Nordic American is not a subsidiary of Taboca AS." (*Id.* (citing Quinn Decl. ¶ 8).)

- "Nordic American does not purchase or receive from Taboca AS any TABOCA brand products for resale or distribution in the United States or anywhere else." (*Id.* at 3–4 (citing Quinn Decl. ¶ 9).)

These facts pertain to Nordic American's joint liability for the unlawful conduct alleged in the Amended Complaint and Nordic American's past and present use of the TABOCA trade name and mark in U.S. commerce, both of which are issues raised in Nordic American's Motion. As such, they are appropriate topics for discovery. *Trans Pac. Ins. Co.*, 136 F.R.D. at 390 (parties may "conduct meaningful discovery" to ascertain the potential liability of each defendant, in particular where the plaintiff alleges that the defendants are affiliated companies); *see also Expediters Int'l of Wash., Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*, 995 F. Supp. 468, 482 (D.N.J. 1998) (denying the defendant's motion for summary judgment where there was a factual question as to the nature of the defendant's relationships with and control over its affiliates and where there was a "nexus between these relationships and the plaintiff's claim").

**C.    In the Event the Court Considers the Motion, It Should Be Denied Because Genuine Issues of Material Fact Remain**

Although PM USA maintains that Nordic American's motion for summary judgment is premature pending adequate discovery, PM USA submits the following substantive response to preserve its rights on appeal in the event the Court considers Nordic American's Motion at this time.

Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In reviewing the record on summary judgment, "a court's role remains circumscribed in that it is inappropriate for a court to resolve factual disputes and to make credibility determinations . . . Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple*

*BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citations omitted).

Summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The moving party bears the

responsibility of demonstrating the absence of a genuine issue of a material fact. *Celotex Corp.*,

477 U.S. at 323.

> **1.    There Is a Genuine Issue of Material Fact As to Whether Nordic American Is Using the TABOCA Trade Name and Mark in U.S. Commerce**

Section 43(a) of the Lanham Act provides for a civil action against

> [a]ny person who, on or in connection with any goods or services, . . . uses in commerce, any word, term, name, symbol, or device, or any combination thereof, . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A).[3]  Here, Nordic American challenges only the "use" element of this

standard.  (Mem. at 9–11.)  It *does not dispute* that Defendants' use of the TABOCA name and

mark in U.S. commerce is likely to cause consumer confusion between Defendants and their

TABOCA products, on the one hand, and PM USA and its TABOKA products, on the other

hand.

Genuine issues of material fact remain as to Nordic American's use of the TABOCA

name and mark in U.S. commerce despite Nordic American's bald assertion to the contrary.

(Mem. at 11 ("The Declaration of Darren Quinn *indisputably establishes* that Nordic American is

not using the TABOCA trade name or mark in U.S. commerce. . . .") (emphasis added).)  This

Court need not, and should not, simply take Nordic American at its word.  *See Shaboon v.

Duncan*, 252 F.3d 722, 736 (5th Cir. 2001) ("unsupported declarations setting forth ultimate or

---

[3] PM USA does not dispute that its other causes of action also require "use in commerce," with the exception of its claim for attorney fees.

conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment") (internal quotation marks omitted).

Indeed, for purposes of infringement, the "use in commerce" requirement has a "sweeping reach."[4] *Planned Parenthood Fed'n of Am., Inc. v. Bucci*, 1997 WL 133313, at *3 (S.D.N.Y. Mar. 24, 1997); *Site Pro-1 Inc. v. Better Metal LLC*, 506 F. Supp. 2d 123, 127 (E.D.N.Y. 2007) ("The key question is whether the defendant placed plaintiff's trademark on any goods, displays, containers, or advertisements, *or used plaintiff's trademark in any way that indicates source or origin*.") (emphasis added). PM USA's allegations of use, which it seeks to prove through discovery, create a genuine issue of material fact under this broad standard.

For example, Nordic American does not dispute that Taboca AS and Taboca USA Inc. (for whose actions Nordic American remains liable) both used the "Taboca" trade name in interstate commerce after PM USA's May 5, 2005 priority filing date for TABOKA, in trademark applications submitted with the USPTO, in connection with the Strategic Relationship Agreement with R.J. Reynolds, in widespread press releases, and on the Internet. (Compl. ¶¶ 15, 16, Exs. B–D.) These uses of the "Taboca" trade name by both Defendants are sufficient "uses in commerce" to support each of PM USA's causes of action. It is of no import that, as Nordic American claims, Defendants purportedly did not use the Taboca trade name on goods. Any confusion caused by use of the name is actionable. *See Nat'l Customer Eng'g, Inc. v. Lockheed Martin Corp.*, 43 U.S.P.Q.2d 1036, 1037 (C.D. Cal. 1997) (holding that the "unauthorized use of a registered trademark as part of a corporation title and name may be deemed trademark infringement" and finding likelihood of confusion between the defendant's "MountainGate"

---

[4] Defendant's statement (Mem. at 10) that "there is no trademark 'use' where a defendant does not place the mark on any product or good" is an inaccurate statement of the law. Defendant confuses "use in commerce" for purposes of infringement with the "use in commerce" requirement applicable to registration of a trademark, which it articulates and which is set forth in Section 45 of the Lanham Act, 15 U.S.C. § 1127. 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:11.50 (4th ed. 2006) (hereinafter, "McCarthy") ("The Lanham Act § 45 definition of 'use in commerce' . . . was clearly drafted to define the types of 'use' that are needed to qualify a mark for federal registration—not as a candidate for infringement.").

corporate name and the plaintiff's MOUNTAIN mark where both were used in connection with computer data storage); 1 McCarthy at § 9.3 ("[D]efendant's use of plaintiff's trademark as part of defendant's corporate title and name may be called trademark infringement.").

Further, Nordic American's apparent claims of inactivity are belied by the press release it attached to its Motion.  (Mem., Ex. B.)  According to this press release, issued just nine days after Nordic American changed its name from Taboca USA Inc., Mr. Quinn stated:  "The name change more closely reflects our Company's core strength in manufacturing smokeless tobacco products based on Swedish snus technology combined with our expertise in marketing smokeless tobacco products to adult American consumers" and Nordic American "is on track to launch its flagship products early this year."  (*Id.*)  Presumably, this "core strength in manufacturing smokeless tobacco" and "expertise in marketing smokeless tobacco products" did not suddenly arise the day the name was changed, and Nordic American did not suddenly become "on track to launch its flagship products early this year" in the nine days after changing its name.  Nordic American was obviously operating under the "Taboca" trade name during the time it developed this business, and PM USA should be allowed to discover what uses of the infringing name were made during that time.

Nordic American argues, however, that summary judgment is proper because it is not *currently* using the TABOCA name in U.S. commerce.  (Mem. at 10.)  The only "proof" Nordic American proffers is its CEO's "word" that the company is not using the infringing mark.  As emphasized above, the Court need not and should not take this word as gospel.  Such "evidence" is contradicted by PM USA's allegations, proof of which it seeks through discovery, including claims that TABOCA snus is currently being sold to U.S. consumers through the Internet. (Compl. ¶¶ 18, 20, 24.)  Nordic American is not entitled simply to deny this allegation (Quinn Decl. ¶ 11) without allowing PM USA to inquire into the basis and truth of this denial.  This is reason alone to deny summary judgment.  In the event, however, that the Court entertains the instant motion for summary judgment, PM USA seeks further discovery on the nature and extent of Nordic American's former, current, and potentially future use of the "Taboca" trade name.

**D.    The Court Should Deny the Motion and Provide PM USA with Injunctive Relief and Damages**

As alleged in the Amended Complaint, for nearly two years, Defendants have been ramping up to sell TABOCA snus in the United States, and TABOCA brand snus already has been sold to U.S. consumers in Delaware.  (Compl. ¶¶ 13, 15, 16, 18.)  Only after PM USA filed its initial Complaint in this matter did Nordic American suddenly change its name and proclaim that it no longer is using the TABOCA name in U.S. commerce.  The harm that PM USA will suffer if TABOCA snus continues to be sold in the United States entitles it to the security and force of a court order enjoining future infringement.

Nordic American's self-serving assertion that it does not plan to use the TABOCA name in the United States does not obviate the need for injunctive relief.  "Along with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct. . . . The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility that serves to keep the case alive."  *United States v. W. T. Grant Co.*, 345 U.S. 629, 635 (1953); *see also Century 21*, 425 F.3d at 217.

In *Basic Fun, Inc. v. X-Concepts, LLC*, for example, the court imposed an injunction despite the counterclaim defendant's apparent pledge to cease its infringing activity.  157 F. Supp. 2d 449, 457 (E.D. Pa. 2001).  The court held that the defendant's "professed intent to 'stop' infringing is not a legally adequate basis to deny the preliminary injunction."  *Id.*  The court continued:  "A movant has no burden to prove likely repetition of the infringement to obtain an injunction. . . . If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [movant] substantial protection of its trademark."  *Id.* (citations omitted); *see also Apollo Distrib. Co. v. Jerry Kurtz Carpet Co.*, 696 F. Supp. 140, 144 (D.N.J. 1988) ("Assuming that defendants have discontinued use of the mark, as they claim they have, an injunction will not harm them in any way.  It will, however, insure plaintiff of the exclusive use of an incontestable mark to which it is entitled.").

The possibility of recurring infringement exists in this case for several reasons.  First, Defendants, on multiple occasions, have asserted rights in the TABOCA name and mark in the

United States, and have proceeded for over two years with preparations to start selling infringing TABOCA products.  They also appear to have sold TABOCA products in the United States. Second, Defendant Taboca AS is still operating under the confusingly similar Taboca trade name, and has made no assurance that it will not use this name in the United States, where its CEO and Executive Vice President of Business Development reside.  Finally, Nordic American changed its corporate name only in response to the filing of this lawsuit.  This is just the type of evidence courts consider in determining whether a request for injunctive relief is viable.  *See, e.g.*, *Nat'l Geographic Soc'y v. Conde Nast Publ'ns, Inc.*, 687 F. Supp. 106, 110 (S.D.N.Y. 1988) (holding that because agreement to discontinue infringement was brought about by lawsuit, plaintiff was "entitled to the protection of an injunction"); *Burger King Corp. v. Weaver*, 33 F. Supp. 2d 1037, 1040 (S.D. Fla. 1998) ("Since [defendant] has willfully violated [plaintiff's] trademark rights and failed to cease his actions until [plaintiff] sought injunctive relief, the Court concludes that [plaintiff] is entitled to injunctive relief despite [defendant's] claim that this issue has been mooted by his voluntary cessation of use of [plaintiff's] Marks and his pledge not to use [plaintiff's] Marks in the future.").

Even if the Court is not inclined to grant injunctive relief, dismissal is inappropriate because PM USA may still be entitled to damages, attorney fees, and other relief.  *Jersey Cent. Power & Light Co. v. State of N.J.*, 772 F.2d 35, 41 (3d Cir. 1985) ("The availability of damages or other monetary relief normally precludes a finding of mootness.").  In *CMM Cable Rep. Inc. v. Ocean Coast Properties Inc.*, 48 F.3d 618, 621 (1st Cir. 1995), the First Circuit dismissed an appeal of the denial of a preliminary injunction because the court accepted the defendant's assurances that it had stopped the complained-of activity.  The court stated, however:  "We emphasize that appellant's suit remains pending in the district court . . . the suit itself is not moot because the relief requested is attainable; if appellant ultimately prevails, the district court can award money damages, attorneys' fees, and other effective relief."  *Id.*

The Court should not accept Nordic American's "word" that it will no longer use the TABOCA name in connection with smokeless tobacco products in the United States.  Instead,

the Court should deny the Motion and allow PM USA to prove up its claims for injunctive relief and damages.

## V.     CONCLUSION

For the foregoing reasons, Nordic American's Motion to Dismiss Plaintiff's First Amended Complaint or, Alternatively, Motion for Summary Judgment should be denied in its entirety.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*
_____
Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Of Counsel:*                                                    *Attorneys for Plaintiff*

Christopher P. Foley
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-3315
(571) 203-2700

Roberta L. Horton
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5161

Dated:  May 2, 2008