IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHILIP MORRIS USA, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action Case No.: 08-028 SLR |
| v. | ) |
| | ) |
| TABOCA AS and, NORDIC | ) |
| AMERICAN SMOKELESS, INC., f/k/a | ) |
| TABOCA USA, INC., | ) |
| | ) |
| Defendant, | ) |
| | ) |
| | ) |

**DEFENDANT NORDIC AMERICAN SMOKELESS, INC.'S
REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT OR, ALTERNATIVELY,
<u>MOTION FOR SUMMARY JUDGMENT</u>**

 

MCCARTER & ENGLISH
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE  19801
302-984-6300
Attorneys for Defendant,
Nordic American Smokeless Inc.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………...iii

ARGUMENT……………………………………………………………………………1

    I.    The Complaint On Its Face Utterly Fails To Provide Notice Of What Nordic American Is Supposed To Have Done To Warrant Presence In This Action……………………………………………2

    II.    Plaintiff Failed The Heightened Pleading Standard For An Alter Ego Claim………………………………………………………….6

    III.    In The Alternative, Nordic American Is Entitled To Summary Judgment…………………………………………………………...8

CONCLUSION…………………………………………………………………..10

ME1 7367742v.1

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Bell Atlantic Corp. et al. v. Twombly et al.,* 127 S. Ct. 1955, 1965 (2007)………………... 4

*Bussy v. Phillips*, 419 F. Supp. 2d 569 (S.D.N.Y. 2006)……………………………………..10

*Commerce Nat. Ins. Serv., Inc. v. Commerce Ins. Agency, Inc.,* 214 F.3d 432, 437
    (3d Cir. 2000)……………………………………………………………………………8

*Igbal v. Hasty*, 490 F.3d 143, 157 (2nd Cir. 2007)……………………………………………. 5

*Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 269 (D. Del. 1989)…………….. 7

*Phillips v. Alleghany County,* 515 F.3d 224, 232 (3rd Cir. 2008)…………………………... 4

*Ridge at Redhawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)…………….... 4

*Tracinda Corp. v. DaimlerChrysler AG,* 197 F.Supp.2d 42 (D. Del. 2002)………………. 6

## **STATE CASES**

*Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical,* 2004 WL 415251 at *2
    (Del.Ch. 2004)…………………………………………………………………………... 5

## ARGUMENT

The Answering Brief presents but two arguments against dismissing the Complaint's vague, purely speculative allegations against Nordic American. The first is that conflated allegations against a group of defendants, with nary a hint of specific conduct alleged against one of them, satisfies the standard of Fed. R. Civ. P. 8(a). The second is a new argument neither made in the Complaint nor supported by any allegation therein: that Nordic American is a mere alter ego of Taboca AS and therefore is trapped in this litigation even if it did nothing at all. Alas, Plaintiff chose to sue in Delaware, a jurisdiction uncommonly conversant in sham attempts to pierce the corporate veil. Neither of these two arguments can prevail.

Alternatively, the Answering Brief argues in essence that Fed. R. Civ. P. 12(b)(6) can never apply in a Lanham Act context, and the Federal Courts are powerless to avoid costly and pointless discovery through invocation of that Rule's provision for converting a motion to dismiss to a motion for summary judgment. According to the Answering Brief, the mere filing of a Lanham Act complaint inexorably traps any defendant in a year's worth of discovery, even if it is apparent on the face of the complaint that the plaintiff has sued the wrong party or drastically overreached to charge an entire corporate family for the acts of one affiliate. The judicial system, according to the Answering Brief, is equally trapped supervising such a wasteful exercise. Again, this argument fails.

The Court should recognize the Complaint's allegations against Nordic American for what they are: a few conflated, conclusory statements presented not because of anything Nordic American has done, but rather as a ploy to manufacture jurisdiction over the foreign defendant Taboca AS. Both the Federal Rules of Civil Procedure and Delaware law regarding piercing the

corporate veil prevent such sham allegations against a corporation from being used to trump up otherwise non-existent jurisdiction against a foreign affiliate.

I.      The Complaint On Its Face Utterly Fails To Provide Notice Of What Nordic American Is Supposed To Have Done To Warrant Presence In This Action.

Assuming as we must that every allegation in the Complaint is true reveals the following fact scenario:

(1) Taboca AS and Philip Morris both wanted to market products in the US under the similar Taboka/Taboca trade names.

(2) Philip Morris filed an intent-to-use application on May 5, 2005 for the Taboka trade name, beating Taboca AS to the punch. D.I. 1 ¶8.

(3) On June 27, 2006, the USPTO published the application for opposition. D.I. 1 ¶10.

(4) Taboca AS timely opposed Philip Morris's trademark application and the parties fought over the mark before the USPTO throughout the remainder of 2007. D.I. 1 ¶13.

(5) While that litigation progressed, Taboca AS took steps to announce that it intended to enter the US snus market. All such announcements attached to the Complaint were made by Taboca AS and not Nordic American. None of these announcements mention Nordic American. D.I. 1 - Ex. A & B.

(6) Philip Morris won the opposition proceeding before the USPTO on December 18, 2007. D.I. 1 ¶17.

(7) In the wake of the USPTO ruling, Taboca USA, Inc. - a US affiliate (not subsidiary) of Taboca AS - changed its corporate name to Nordic American on January 22, 2008 and announced its name change to the public in a press release. D.I. 1 ¶4.

The "Facts" section of the Complaint alleges that Nordic American alone did only two things: (a) changed its name, which it believed the December 18, 2007 USPTO order required it

2

to do (D.I. 1 ¶4), and (b) filed applications for five trademarks. D.I. 1 ¶15(f). While the Complaint misleadingly phrases the latter paragraph to imply that those five marks infringed upon "Taboka", it is public record, and Philip Morris is expressly aware, that those applications were for the entirely different marks KLONDIKE, NORDIC ICE, BONANZA, FREEBIRD, and NORDIC SNUS. Philip Morris does allege that it owns those marks, or otherwise that is has any dispute with Nordic American's applications to register these marks.

In contrast, Philip Morris alleges that Taboca AS was the party contesting the mark before the USPTO (D.I. 1 ¶¶13,14,16,17,20) making press announcements (D.I. 1 Ex. A, B), hiring executives (D.I. 1 ¶¶15(a),(d)), signing joint venture agreements (D.I. 1 ¶15(b)) , and taking preliminary steps to organize entry into the US market (D.I. 1 ¶14). All of the exhibits to the Complaint mention Taboca AS to the extent they mention either Defendant; none mention Nordic American under either its present or former name. D.I. 1 Ex. A, B.

The remainder of the Complaint conflates all its allegations to "Defendants" without any indication of what Nordic American as opposed to Taboca AS is supposed to have done. According to the Answering Brief, this ambiguity should be overlooked because Plaintiff wishes to make a blanket allegation that both Defendants did everything complained of. D.I. 8 at 8. But the Complaint, as indicated above, belies this assertion. To its credit, Plaintiff was apparently incapable of alleging, even upon information and belief, that Nordic American as opposed to Taboca AS did any of the acts complained of in D.I. 1 ¶¶ 13-14, 15(a)-(d), 16, 17, or 20. Unfortunately, this did not stop Plaintiff from formulaically alleging that "Defendants" committed each element of the statutory and tort claims leveled in the Complaint.

The Supreme Court has expressly stated that such empty formalism is not enough to defeat a motion to dismiss:

3

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).(internal citations and punctuation omitted).

*Bell Atlantic Corp. et al. v. Twombly et al.,* 127 S. Ct. 1955, 1965 (2007).

The Supreme Court continued that "Rule 8(a)(2) still requires a showing, rather than a blanket assertion, of entitlement to relief." *Id*. at n. 3. More specifically, the Supreme Court stated that Rule 8 requires that a complaint state "enough facts to state a claim for relief that is plausible on its face." *Id.* at 1959. A complaint that does "not nudge[] its claims across the line from the conceivable to the plausible" must be dismissed. *Id*. The Tenth Circuit stated the proposition thusly: "The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Redhawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Of course, to make any sense this exposition implicitly includes the additional qualifier of "against *this* defendant". If it were otherwise, Rule 8 would permit any party to be added to any claim, so long as that claim was effectively leveled against at least one defendant. This is clearly the opposite of *Twombly's* intent.

The "plausibility standard" recognized in such cases as *Ridge at Red Hawk* has been stated slightly differently in the Third Circuit, as "context matters". "Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case-some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Phillips v. Alleghany County,* 515 F.3d 224, 232 (3rd Cir. 2008). Or, as the Second

4

Circuit phrased it, "we believe [*Twombly*] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Igbal v. Hasty*, 490 F.3d 143, 157 (2nd Cir. 2007) (emphasis original).[1]

The "context" of the instant case is a complex commercial claim that, if permitted to proceed, will certainly require the "sprawling, costly, and hugely time-consuming discovery" warned of in *Igbal*. *Id*. The only facts pled specifically against Nordic American are that it exists (D.I. 1 ¶4), it was incorporated (D.I. 1 ¶15(e)), that it filed for five unrelated trademarks (D.I. 1 ¶15(f)), and that it changed its name (D.I. 1 ¶4). The remainder of the Complaint's allegations are either (a) specific allegations of fact against Taboca AS, or (b) empty formulaic allegations of the elements of various torts and statutory claims. Put simply, this is not enough to "nudge [Plaintiff's] claims across the line from the conceivable to the plausible." *Twombly*, 127 S. Ct. at 1959. The action must therefore be dismissed.

The dearth of allegations against Nordic American reveal plainly Plaintiff's purpose: Nordic American is in the case only because Plaintiff fears that it will be unable to sue Taboca AS in the United States, likely because of both personal jurisdiction and the high standard for extraterritorial application of the Lanham Act. Plaintiff's Complaint against Nordic American is merely a ruse to secure the Court's jurisdiction over Taboca AS. This is permissible only if the Complaint pleads an alter ego claim is made, and succeeds. See e.g. *Medi-Tec of Egypt Corp. v.*

---

[1] The Answering Brief contains a footnote stating that there is no support for the proposition that complex commercial statutory claims may require greater factual exposition than a simple negligence or contract action. D.I. 8 at fn 1. However, the Op. Br. appropriately cites *Phillips* for the proposition that "context matters" in notice pleading, and that complex claims that would require enormously expensive discovery must be supported by at least enough factual allegation to make them plausible. D.I. 7 at 8. To the extent that *Phillips* is not enough, *Igbal* expressly acknowledged the same proposition. *Igbal*, 490 4.3d at 157.

5

*Bausch & Lomb Surgical,* 2004 WL 415251 at *2 (Del.Ch. 2004)("Dismissal is appropriate under Rule 12(b)(6) only when it appears with reasonable certainty that the Plaintiff would be entitled to relief <u>under any reasonable set of facts properly supported by the complaint</u> and any integral documents incorporated therein." emphasis added)(granting dismissal under Rule 12(b)(6) of a complaint that actually included a specific alter ego claim, but that did not plead facts to support each element of it). As discussed *Post II.,* Philip Morris's belated attempt to make such a claim in its Answering Brief (not its Complaint) utterly fails.

      II.      <u>Plaintiff Failed The Heightened Pleading Standard For An Alter Ego Claim</u>

The Answering Brief's second argument, which appears nowhere in the Complaint, is that Nordic American is the alter ego of Taboca AS and therefore all factual allegations made against Taboca AS apply equally to Nordic American. D.I. 8 at 7-8.

As an initial matter, Plaintiff should not even be permitted to make this argument in the context of this motion to dismiss. The "facts" used to support this argument appear nowhere in the Complaint, where the concept of alter ego is never mentioned. Instead, the "facts" appear only in the Answering Brief and *new* exhibits that are attached thereto. D.I. 8 at 7-8, Ex. A. To the extent this argument is considered in the context of the motion to dismiss, only the facts in the Complaint, and not fact allegations that Plaintiff withheld in favor of later briefing, may be considered. <u>See e.g.</u> *Tracinda Corp. v. DaimlerChrysler AG,* 197 F.Supp.2d 42 (D. Del. 2002)("As a general matter, a court may not consider matters outside the pleadings when adjudicating a motion to dismiss.").[2]

Plaintiff's new alter ego claim if taken by itself would appear to be an acknowledgement

---

[2] Even if it were appropriate to consider the new factual allegations contained in and documents attached to the Answering Brief in this context, they would change nothing. The press release allegedly made by Nordic American, seemingly proffered as a "smoking gun", is about "Nordic American's flagship brands, Klondike and Nordic Ice." The alleged press release does not mention the disputed Taboka/Taboca mark nor suggest that Nordic American has committed or intends to commit any act of infringement.

6

that the Complaint does not state sufficient factual support for claims against Nordic American, which indeed it does not. *Ante I.A.* Assuming just for the sake of argument that a new alter ego allegation is permissible at this stage, Plaintiff failed miserably to state it with the particularity required, as explained for example by the Delaware Court of Chancery in *Medi-Tec of Egypt Corp.*, 2004 WL 415251 at *7:

> For this Court to pierce the corporate veil or hold that BLS Inc. is the alter ego of BLS France, Medi-Tec must prove that some fraud or injustice would be perpetrated through misuse of the corporate form. Medi-Tec argues that the alleged breach of contract and misrepresentations by Defendants that the company Medi-Tec dealt with before it entered into the contract was an American company are sufficient to meet this requirement. <u>To support piercing the corporate veil, however, the fraud or injustice must consist of something more than the alleged wrong in the complaint and relate to a misuse of the corporate structure.</u> (emphasis added).

Delaware law is crystal clear that the "fraud or something like fraud" that can trigger alter ego liability must be intrinsic to misuse of the corporate form, and not other conduct:

> The law requires that fraud or injustice be found in the defendants' use of the corporate form …[L]imiting one's personal liability is a traditional reason for a corporation. Unless done deliberately, with specific intent to escape liability for a specific tort or class of torts, the cause of justice does not require disregarding the corporate entity. The corporate form itself works no fraud on a [tort victim] who has never elected to deal with the corporation.

*Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 269 (D. Del. 1989); citing *Zubik v. Zubik*, 384 F.2d 267 (3d Cir. 1967)(internal citations and punctuation omitted).

In *Mobil Oil Corp.*, Judge Latcham specifically delineated the reasons that alter ego liability requires such a heightened pleading standard, and why a mere allegation of "infringement" does not meet it:

> Any breach of contract and any tort-such as patent infringement-is, in some sense, an injustice. Obviously this type of injustice is not what is contemplated by the common law rule that piercing the corporate veil is appropriate only upon a showing of fraud or something like fraud. The underlying cause of action does not supply the necessary fraud or injustice. To hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping.

7

*Mobil Oil Corp.*, 718 F. Supp. at 268.  Moreover, "cases where the corporate veil is pierced invariably involve some degree of *reliance* by plaintiff, contributing to the fraud or accenting the injustice. Such reliance is far more common in the context of a business transaction, where, for example, there is a breach of contract, than in the case of a tort, where typically the plaintiff cannot be said to have relied upon defendant's conduct." *Id.* at fn 11 (emphasis original; internal citation omitted).  In the instant case, Philip Morris has not alleged that it relied on anything Nordic American or Taboca AS said or did, or that Nordic American's corporate form works some fraud or injustice - this is a simple infringement case that cannot support an alter ego claim.  Of course, consideration of such a claim would require that the Complaint made it in the first place, which it did not.

    III.    <u>In The Alternative, Nordic American Is Entitled To Summary Judgment</u>

It is axiomatic that infringement of a trade name or trademark requires use of the name or mark "on or in connection with any goods or services" in a context that is likely to cause confusion, mistake, or deception.  15 U.S.C. § 1125 (a)(1)(A).[3]  Accordingly, if a defendant does not sell any goods or services -- as is the case with Nordic American -- it necessarily cannot commit infringement.  <u>See also</u> *Commerce Nat. Ins. Serv., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d Cir. 2000)(trademark infringement requires plaintiff to prove that "defendant's use of the mark to identify its goods or services is likely to create confusion concerning the origin of those goods or services."); *Checkpoint Sys., Inc. v. Check Point Software Tech., Inc.*, 269 F.3d 270, 279 (3d Cir. 2001) (same).

---

[3]    Infringement of a registered trademark similarly requires use "in connection with the sale, offering for sale, distribution, or advertising of any goods or services".  15 U.S.C. § 1114(1)(a).

Every cause of action in the First Amended Complaint is based on the fundamental allegation that Nordic American is allegedly using the Taboca name and mark in connection with sales of smokeless tobacco products.[4]  It is undisputed that Nordic American has never sold any products, let alone any products under the Taboca name and mark.  (D.I. 7 - Quinn Declaration ¶ 5, Ex. C).  Although Philip Morris baldly asserts otherwise it has no factual support for its allegations.  Indeed, Philip Morris repeatedly alleges throughout the First Amended Complaint that Nordic American (one of the "Defendants") is allegedly selling "TABOCA smokeless tobacco products" in a manner likely to deceive consumers (D.I. 3).  These allegations are inherently public in nature.  If Nordic American were in fact selling TABOCA smokeless tobacco products then Philip Morris certainly would be able to point to at least one such sale.  Philip Morris cannot point to any such sale because such evidence does not exist.  Further, Philip Morris' assertion that Nordic American is selling smokeless tobacco products under the TABOCA name and marks -- after announcing to the trade its name change to "Nordic American Smokeless, Inc." and publicizing the upcoming launch of its products under the KLONDIKE and NORDIC ICE brands -- is nonsensical.  (D.I. 7 - Quinn Declaration ¶s 4 and 6; D.I. 7 - Eder Declaration, Exs. C and D).  Any such sales would be counter-productive to Nordic American's product launch under its new name and mark.  Philip Morris' allegation that Nordic American has sold, or is selling smokeless tobacco products under the TABOCA name and mark is

---

[4]  The first cause of action under the § 43(a) of the Lanham Act alleges that Defendants are "publicly using the TABOCA trade name and mark in U.S. commerce in connection with their smokeless tobacco products" (D.I. 1 ¶ 26); the second cause of action for trademark infringement under § 43(a) of the Lanham Act alleges that "Defendants currently are selling smokeless tobacco products under the TABOCA mark to U.S. consumers" (D.I. 1 ¶ 29); the third cause of action for deceptive trade practices alleges that Defendants are "willfully 'passing off' their TABOCA smokeless tobacco products" (D.I. 1 ¶ 32); the fourth cause of action for common law trademark and trade name infringement alleges "willful use of the TABOCA trade name and mark . . . to deceive consumers into thinking that Defendants' products are Philip Morris USA products" (D.I. 1 ¶ 36); the fifth cause of action for common law unfair competition is based on Defendants' "'passing off' of their TABOCA smokeless tobacco product" (D.I. 1 ¶ 39); and the sixth cause of action for attorneys' fees alleges "bad faith use of the TABOCA trade name and mark in U.S. commerce in connection with smokeless tobacco products" (D.I. 1 ¶ 43).

9

speculative and devoid of any factual support whatsoever. Accordingly, Philip Morris' attempt to avoid summary judgment by requesting discovery on this issue must be denied. See *Bussy v. Phillips*, 419 F. Supp. 2d 569 (S.D.N.Y. 2006) ("Discovery is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of factual support. [Plaintiff] is entitled to proceed with discovery only if the claims stated in the Complaint are viable".). Nordic American indisputably has not sold any smokeless tobacco products, let alone under the TABOCA name and mark, and therefore is entitled to summary judgment on all counts of the Complaint.

Philip Morris' argument at page 9 of its Answering Brief that Nordic American is liable for acts of infringement "that occurred *prior* to its name change", and that such acts entitle Philip Morris to request damages and injunctive relief, misses the mark. As indicated above, Nordic American indisputably has not sold any smokeless tobacco products, and therefore necessarily has not committed trademark infringement. Unless and until Philip Morris can prove trademark infringement, it has no grounds to seek damages or injunctive relief.

Philip Morris' argument on page 16 of its Answering Brief that "the 'use in commerce' requirement has a 'sweeping reach'" does not change the fact that trademark infringement requires that such use be in connection with the sale of goods or services. Indeed, in each case cited by Philip Morris at page 16 of its Answering Brief, the infringing defendant was using the mark in connection with competing goods or services. Similarly, the cases cited at page 18 of Philip Morris' Answering Brief in support of its argument for an injunction, all involved the past use of an infringing mark in connection with the sale of goods or services, and thus involved a threat of recurring unlawful activity. In stark contrast to these cases, Nordic American

10

indisputably has not sold smokeless tobacco products either before or after its name change, and therefore necessarily did not commit any infringing activity to be enjoined.

## CONCLUSION

For the foregoing reasons, Nordic American respectfully requests that this Court dismiss Plaintiff's Complaint, and in the alternative, enter judgment in favor of Nordic American as a matter of law.

                                  MCCARTER & ENGLISH

                By:    /s/ Andrew S. Dupre
                        David A. White (DE Bar ID No. 2644)
                        Andrew S. Dupre (DE Bar ID No. 4621)
                        Renaissance Centre
                        405 N. King Street, 8th Floor
                        Wilmington, DE  19801
                        302-984-6300
                        Attorneys for Defendant
                        Nordic American Smokeless Inc.

Dated:  May 14, 2008

11

## CERTIFICATE OF SERVICE

I, Andrew S. Dupre, attorney for Nordic American Smokeless, Inc., hereby certify that on this date, a true and correct copy of the foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANT NORDIC AMERICAN SMOKELESS INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, ALTERANTIVELY, MOTION FOR SUMMARY JUDGMENT** was served by First Class Mail upon the following counsel of record:

>Steven J. Balick, Esq.
>Tiffany Geyer Lydon, Esq.
>Ashby & Geddes, P.A.
>500 Delaware Avenue, 8th Floor
>Wilmington, DE  19899

>Christopher P. Foley, Esq.
>Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P
>Two Freedom Square
>11955 Freedom Drive
>Reston, VA  20190

>By:   /s/ Andrew S. Dupre
>         Andrew S. Dupre (DE Bar ID No. 4621)

Date:  May 15, 2008