# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| PHILIP MORRIS USA, INC. | : CIVIL ACTION |
| | : |
| Plaintiff, | : DOCKET NO.: 08-028-SLR |
| | : |
| v. | : |
| | : |
| TABOCA AS and | : |
| NORDIC AMERICAN SMOKELESS INC. | : |
| | : |
| Defendants | : |
| | : |
| | : |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TABOCA AS'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

---

Andrew S. Dupre (DE Bar ID No. 4621)
MCCARTER & ENGLISH
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE  19801
302-984-6300
Attorney for Defendant,
Taboca AS

ME1 7413430v.3

# TABLE OF CONTENTS

PAGE

Table of Authorities .......................................................................................................... iv

I. Nature and Stage of the Proceedings ........................................................................ 1

II. Summary of the Argument ....................................................................................... 1

III. Statement of Facts ................................................................................................... 2

IV. Argument ................................................................................................................. 4

A. Standard of Review ................................................................................................... 5

1. Exercise of Personal Jurisdiction Requires Pleading of Specific Fact Evidence of Jurisdictional Contacts ............................................................................................... 5

2. Subject Matter Jurisdiction Requires a Substantial Effect on U.S. Commerce and a Lack of Conflict with Foreign Trademark Law ...................................................... 6

3. Fed. R. Civ. P. 12(b)(6) Requires Non-Speculative Allegations ............................ 6

B. The Complaint Fails Both Procedurally and Substantively to Allege Personal Jurisdiction Over Taboca AS ....................................................................................... 7

1. The Complaint Fails the Procedural Requirements for Alleging Personal Jurisdiction ...................................................................................................................... 7

2. The Barren Speculation in the Complaint Would Not Have Established Personal Jurisdiction Even If It Had Been Properly Alleged ................................................. 8

C. This Court Lacks Subject Matter Jurisdiction Over Taboca AS's Scandinavian Business ......................................................................................................................... 11

1. Taboca AS's Scandinavian Sales Have Zero Effect on U.S. Commerce ............... 13

2. The Court Cannot Exercise Subject Matter Jurisdiction Without Trampling Taboca AS's Scandinavian Trademarks ..................................................................... 15

ME1 7413430v.3

D.  Taboca AS Is Not Liable for the Conduct of Third Parties That Legally Purchase
      Its Products in Scandinavia and Resell Them on the Internet; The Complaint
      Therefore Fails to State a Claim For Which Relief Can Be Granted ............................17

1.  Allegations Unrelated to the Sale of Goods or Services Are Not Actionable ...............18

2.  The Complaint's Vague Allegations About Resale of Goods By Unrelated Third
      Parties Also State No Cause of Action ....................................................................19

3.  The Complaint Was Filed For An Improper Purpose ............................................21

V.  Conclusion ..............................................................................................................23

iii

# TABLE OF AUTHORITIES

## FEDERAL CASES

*America Rice, Inc. v. Ark. Rice Growers Cooperative Association*, 701 F.2d 408 (5th Cir. 1983) ...................................................................................................14

*Amer. Telegraph and Telegraph Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421 (3rd Cir. 1994) ..............................................................................................19

*Bell Atlantic Corp. et al. v. Twombly et al.*, 127 S. Ct. 1955 (2007) ................................15, 21, 23

*Dorsey v. Black Pearl Books, Inc.*, 2006 WL 3327874 (D. N.J.) ...................................13

*Gould Electrics, Inc. v. U.S.*, 220 F.3d 169 (3rd Cir. 2000) ............................................6

*Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082 (C.D. Cal. 2001)..............................21

*Hurley v. Cancun Playa Oasis International Hotels*, No. 99-574, 1999 WL 718556 (E.D. Pa. Aug. 31, 1999) ....................................................................................................8

*International Caf, S.A.L., v. Hard Rock Caf International (U.S.A.), Inc.*, 252 F.3d 1274 (11th Cir. 2001)...........................................................................................................14

*Ketterson v. Wolf*, 2001 WL 940909 (D. Del. Aug. 14, 2001) ...................................6, 21

*McBee v. Delica Co.*, 417 F.3d 107 (1st Cir. 2005)........................................... 8, *passim*

*Mellon Bank (East) PSFS, National Association v. Farino*, 960 F.2d 1217 (3rd Cir. 1992) .........9

*Nintendo of America, Ltd., v. Aeropower Co.*, 34 F.3d 246 (4th Cir. 1994)...........................14, 17

*Parker v. Learn Skills Corp.*, 530 F. Supp. 661 (D. Del. 2008) ....................................... 5, *passim*

*Pernod Ricard USA LLC v. Bacardi U.S.A., Inc.*, 505 F. Supp. 2d 245 (D. Del. Aug. 21, 2007) ........................................................................................................................7, 19

*Proctor & Gamble, Co. v. Haugen*, 317 F.3d 1121 (10th Cir. Jan. 6, 2003)................................22

*Provident National Bank v. California Federal Sav. & Loan Association*, 819 F.2d 434 (3rd Cir. 1987) .........................................................................................................11

iv

*Reebok International, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552 (9th Cir. 1992) ..........14

*Steele v. Bulova Watch Co.*, 340 U.S. 280 (1952) .................................................................12, 17

*Timberlane Lumber Co. v. Bank of America*, 549 F.2d 597 (9th Cir. 1977) ...............................14

*Toys R Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3rd Cir. 2003)...................................................10

*Vanity Fair Mills, Inc. v. T. Eaton Co. LTD et al.*, 234 F.2d 633
        (2nd Cir. 1956)........................................................................................................... 13, *passim*

## UNREPORTED CASES

*American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.*, 1999 WL 615175 (D.
        Del. Aug. 3, 1999)...................................................................................................................6, 11

*Scanvec Amiable, LTD v. Chang*, 80 Fed. Appx 171 at 9 (3rd Cir. 2003) ......................... 6, 12-13

## MISCELLANEOUS

Ved Nanda and David Pansius, 2 *Litigation of International Disputes in US Courts* §8:13
        (2007).........................................................................................................................................13

M. Elaine Buccieri, *Cause Of Action For Trademark Infringement Under The Lanham
        Act*, 10 Causes of Action 2d 501 (2007) ...............................................................................19

v

I.      **NATURE AND STAGE OF THE PROCEEDINGS**

On March 19, 2008, Plaintiff Philip Morris USA Inc. ("Philip Morris") filed a First

Amended Complaint (the "Complaint") (DI #3) against Taboca AS and Nordic American

Smokeless Inc. ("Nordic American") alleging trade name infringement, trademark infringement,

unfair competition and related claims based on Defendants' supposed use of Taboca AS's

TABOCA trademark.  Taboca AS was served via the Hague Convention at its corporate offices

in Oslo, Norway on May 15, 2008.  Taboca AS now moves to dismiss pursuant to Fed. R. Civ. P.

12(b)(1), (2) and (6), and for *forum non conveniens*.

II.     **SUMMARY OF THE ARGUMENT**

1.      Taboca AS has no contacts whatsoever with the District of Delaware.  Plaintiffs'

sole basis for asserting personal jurisdiction is that two unrelated third party retailers have made

Taboca AS's legal Scandinavian products available for purchase over the entire world via the

internet.  This allegation has nothing to do with Taboca AS and is not a "minimum contact" that

can serve as a basis for personal jurisdiction.

2.      The Complaint presents no allegation to support subject matter jurisdiction via

extraterritorial application of the Lanham Act.  Plaintiff's sole basis for invoking jurisdiction is

that resellers placed Taboca AS legal Scandinavian products for worldwide sale on the internet.

There is no specific allegation of any US sale by those third parties, but rather only that such sale

might occur because the internet reaches the US.  That allegation presents no basis for

application of subject matter jurisdiction over Taboca AS's lawful conduct in the nation of

Norway.

3.      Even if the Court were to assume there is jurisdiction (there is not), Taboca AS is

not liable for the acts of third parties that legally buy its goods in Scandinavia and sell them on

1

the internet.  Taboca AS has no custody over goods once they are sold, no control over the internet resale market, and derives no income from the alleged re-sales.   The Complaint fails to attempt a claim of contributory infringement or agency liability, and such claims are waived if not plead.  The Complaint therefore fails to state a claim for which relief may be granted.

## III.    STATEMENT OF FACTS

Taking every allegation in the Complaint as true, Defendant Taboca AS is a Norwegian company with its corporate headquarters in Oslo, Norway.  DI #3  ¶3.  Taboca AS markets the smokeless tobacco product snus.[1]  *Id.*

Taboca AS respectfully requests that the Court take judicial notice of the fact that it owns the properly registered Norwegian and Swedish trademark TABOCA.  This fact, conveniently omitted from the Complaint, is a matter of public record, copies of which are attached hereto as Exhibit "A" for the Court's convenience.  Significantly, these public records show that Taboca AS filed its Norwegian trademark TABOCA on April 27, 2004, and its Swedish trademark TABOCA on February 15, 2005.  Taboca AS had its Scandinavian trademarks before Philip Morris applied for its confusingly similar TABOKA mark in the United States on May 5, 2005.  DI #3 ¶8.   Taboca AS legally sells snus under its TABOCA mark in Norway and Sweden.

Nordic American is a US affiliate (not subsidiary) of Taboca AS.  DI #3 ¶4.   Contrary to the Complaint's allegations, Nordic American has never sold any product of any kind, but that fact is not germane to the defenses Taboca AS states here.

In 2005, Taboca AS began investigation of whether the United States tobacco market would support a snus product.  This investigation included assisting in the arrangement of incorporation of Taboca USA Inc. (n/k/a Nordic American): the separate US entity that would

---

[1] Snus is a tobacco product similar to American chewing tobacco or "dip".  However, the curing process for snus eliminates the need for its user to constantly spit.  Snus is believed to have originated in and has a long history of popularity in Scandinavia, and is presently marketed primarily in Norway, Sweden and Denmark.

create the hoped-for future US snus business, exploring strategic partnerships with major US tobacco companies, and hiring US-based executives.  DI #3 ¶15.

Taboca AS's planned entry to the US market was sabotaged by Philip Morris's pre-emptive registration of the mark at issue in this litigation: TABOKA.  Taboca AS challenged Philip Morris's registration of the TABOKA mark before the USPTO.  DI #3 ¶13.  The USPTO ruled against Taboca AS, finding that it had not yet taken sufficient steps to enter the US market to establish a US right to its Norwegian and Swedish TABOCA mark that would trump Philip Morris's right to register a confusingly similar mark.  DI #3 ¶14.

In response to the decision of the USPTO, Taboca AS abandoned the idea of leveraging its duly registered Norwegian and Swedish TABOCA mark in the US.  Nordic American changed to its present name to avoid any confusion with the TABOKA mark.  Nordic American also applied for five trademarks to market snus in the US.  DI #3 ¶15(f).  While the Complaint falsely implies that those trademarks infringed upon the TABOKA mark, Taboca AS respectfully requests that the Court take judicial notice of the fact that those trademark applications were for the entirely different trademarks: KLONDIKE, NORDIC ICE, BONANZA, FREEBIRD, and NORDIC SNUS.  These trademarks were duly filed and are public record, and are attached hereto as Exhibit "B" for the Court's convenience.

The Complaint alleges that Taboca AS is selling snus under its TABOCA mark in the US.  DI #3 ¶18.  The sole support for this allegation is that two third-party internet web pages that sell many products, including the TABOCA snus that is lawfully sold in Norway and Sweden, can be accessed by US consumers.  *Id.*  The Complaint makes no mention of any purchases from these websites that actually occurred in the United States, let alone Delaware.  It is facially obvious that these websites are run by third party retailers and not by Taboca AS, in

that they sell numerous competitors' products and other products that Taboca AS does not sell.[2]
The Complaint is careful to avoid alleging that Taboca AS owns or runs these websites (because
it so obviously does not), instead alleging: "US consumers can purchase TABOCA smokeless
products via" the third party websites.  DI #3 ¶18.

    Despite that Taboca AS has no wish to further argue over the TABOKA mark, Philip
Morris filed the Complaint on March 19, 2008.  The Complaint was served via the Hague
Convention on Taboca AS at its Oslo, Norway office on May 15, 2008.

## IV.    ARGUMENT

    There is no dispute between the parties regarding Philip Morris's exclusive right to use
the TABOKA mark in US commerce, begging the question of why this lawsuit has been filed.
For example, what possible consumer confusion could there be between Philip Morris and
Nordic American, a company that has never sold any products and therefore has had no
interaction of any kind with any consumer?  And why does the Complaint falsely imply that
Nordic American has filed five new infringing trademarks, when it is public record that those
new trademarks are not even remotely similar to TABOKA?

    The answer is simple: Philip Morris is improperly using this Court to attack Taboca AS's
Scandinavian business, which is indisputably lawful in the nations of Norway and Sweden where
it is conducted.  That is why the Complaint fails to mention that Taboca AS possesses lawful
Norwegian and Swedish trademarks for TABOCA that predate Philip Morris's US mark,
TABOKA.  Having beaten Taboca AS to the punch in the US by registering TABOKA, Philip
Morris seeks to use this Court to attack Taboca AS's prior Norwegian and Swedish trademark

---

[2] Merely looking at the printed screenshots attached as Exhibits "C" and "D" to the Complaint (DI #3) shows that
the third party websites at issue sell OFFROAD AND SKRUF snus, which are competitors of TABOCA, and
LUCKY STRIKE brand chewing tobacco and FIREBREAK brand tobacco gum, products that Taboca AS does not
sell at all. This is evident on the face of one printed page of the websites - there are dozens of other linked pages
indicating products other than TABOCA snus.

rights.  The internet is the proposed fulcrum for leveraging this comically brazen attempt to

destroy a foreign company operating lawfully in a foreign country.  According to Philip Morris,

if TABOCA snus can ever be placed on the internet for sale by some third party, then US courts

must declare that it cannot be sold in Norway, despite Norwegian law saying it surely can be.

Unfortunately for Philip Morris, personal and subject matter jurisdiction do not work that way.

      **A.**     **Standard Of Review**

            **1.**    <u>**Exercise of Personal Jurisdiction Requires Pleading of Specific Fact Evidence Of  Jurisdictional Contacts**</u>

This Court succinctly stated the standard for personal jurisdiction in a Lanham Act case

in *Parker v. Learn Skills Corp.*, 530 F. Supp. 661, 673 (D. Del. 2008)(internal citations and

punctuation omitted):

> [T]he plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction. Plaintiff may establish jurisdictional facts through sworn affidavits or other competent evidence. At no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction.  Plaintiff is required to respond to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction with actual proof, not mere allegations.

When personal jurisdiction is predicated under Delaware's long arm statute 10 Del. C.

3104, as seems to be Plaintiff's attempt here, then

> [P]laintiff also must demonstrate that the act or acts occurring in Delaware actually constitute transacting business in Delaware, i.e., that defendants purposefully availed themselves of the privileges and benefits of Delaware law.  With this requirement in mind, courts have concluded that mere solicitation does not arise to transacting business, nor does the isolated shipment of goods into Delaware.  The distinction between isolated business activities and those giving rise to personal jurisdiction has been explained on the basis of whether the conduct is part of a general business plan ... to solicit business in Delaware and deliver products to customers in Delaware.

*American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.*, 1999 WL 615175 at *2 (D.

Del. Aug. 3, 1999)(unreported)(internal punctuation and citations omitted).

A conclusory allegation that a party derives "substantial revenue" from Delaware will not establish personal jurisdiction. *Parker*, 530 F. Supp at 673-4. It is the Plaintiff's burden of proof to establish personal jurisdiction at the pleading stage by a preponderance of competent evidence. *Id*. Notably, a facial challenge to the Court's jurisdiction, such as that mounted here, must be decided solely on the Complaint as written and not on jurisdictional discovery that may reveal matters outside the pleadings. *Ketterson v. Wolf*, 2001 WL 940909 at *4 (D. Del. Aug. 14, 2001); *citing Gould Elecs, Inc. v. U.S*., 220 F.3d 169 (3rd Cir. 2000).

## 2.    Subject Matter Jurisdiction Requires A Substantial Effect On U.S. Commerce and A Lack Of Conflict With Foreign Trademark Law

The Third Circuit in *Scanvec Amiable, LTD v. Chang*, 80 Fed. Appx 171 at *9 (3rd Cir. 2003)(unreported) recently re-stated the *Bulova* test for extraterritorial application of the Lanham Act: "A proper invocation of extraterritorial jurisdiction under the Lanham Act depends on 1) whether the defendant is a United States Citizen, 2) conflicts between the defendant's trademark rights under foreign law and the plaintiff's rights in the United States, and 3) whether the defendant's conduct has a substantial or significant effect on domestic commerce." To secure subject matter jurisdiction, the plaintiff must prove a substantial effect on US commerce and either (a) that the defendant is a US citizen or (b) lack of conflict with foreign trademark law. *Vanity Fair Mills, Inc. v. T. Eaton Co. LTD et al.*, 234 F. 2d 633, 642-3 (2nd Cir. 1956).

## 3.    Fed. R. Civ. P. 12(b)(6) Requires Non-Speculative Allegations

This Court described the Fed. R. Civ. P. 12(b)(6) standard of review in a Lanham Act context in *Pernod Ricard USA LLC v. Bacardi U.S.A., Inc.*, 505 F. Supp. 2d 245, 251 (D. Del. Aug. 21, 2007)(internal citations and punctuation omitted):

> In reviewing a motion filed under Fed. R. Civ. P.12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. A complaint must contain a short and plain statement of the claim showing that

6

the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests. A complaint does not need detailed factual allegations; however, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. The factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.

**B.      The Complaint Fails Both Procedurally And Substantively To Allege Personal Jurisdiction Over Taboca AS**

      **1.      <u>The Complaint Fails The Procedural Requirements for Alleging Personal Jurisdiction</u>**

As stated in the Standard of Review Section *ante IV.A.1.*, the Plaintiff bears the burden of establishing personal jurisdiction through specific pleading and actual proof, not mere conclusory, speculative allegations:

> [T]he plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction. Plaintiff may establish jurisdictional facts through sworn affidavits or other competent evidence. At no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Plaintiff is required to respond to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction with actual proof, not mere allegations.

*Parker*, 530 F. Supp. at 673; citing *Hurley v. Cancun Playa Oasis Int'l Hotels,* No. 99-574, 1999 WL 718556, at *1 (E.D. Pa. Aug.31, 1999)("[g]eneral averments in an unverified complaint or response without the support of sworn affidavits or other competent evidence are insufficient to establish jurisdictional facts.").

Personal jurisdiction is nowhere mentioned in the Complaint, leaving Taboca AS and the Court to divine why Plaintiff believes it has the right to bring suit here. This is difficult, as the Complaint pleads no specific facts regarding personal jurisdiction, let alone offer proof for them. For example, there is no allegation of specific sales to persons in Delaware, even of the "trap" sales by agents of the plaintiff that are routinely held to be inadequate to establish jurisdiction.

*See e.g. McBee v. Delica Co.*, 417 F.3d 107 (1st Cir. 2005)(trap sales by plaintiff inadequate to secure jurisdiction over a foreign company in a Lanham Act case).  The Complaint is phrased as an empty conjecture that "upon information and belief" maybe someone in Delaware might have bought TABOCA snus on a third party internet site run out of Scandinavia.  DI #3 ¶18. Moreover, the Complaint is not verified and does not constitute competent evidence to support an assertion of personal jurisdiction, even if one had been made.  *Parker*, 530 F. Supp. at 673.

The Third Circuit has expressly lain the burden of making a *prima facie* case for personal jurisdiction on the plaintiff at the pleading stage.  *Id.*, see also *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino,* 960 F.2d 1217, 1222 (3rd Cir. 1992)("When a defendant raises the defense of the court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper. The plaintiff meets this burden and presents a *prima facie* case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state.")(internal citation and punctuation omitted).   This Complaint does not take up that burden.  It is not even clear whether Plaintiff is attempting to allege general or specific personal jurisdiction, and no contacts with Delaware are alleged "with reasonable particularity." Personal jurisdiction therefore has not been properly alleged.

       2.      **The Barren Speculation In The Complaint Would Not Have Established Personal Jurisdiction Even If It Had Been Properly Alleged**

Though nowhere mentioned in the Complaint, Plaintiff seems to be basing its assertion of personal jurisdiction over Taboca AS solely on the fact that two unrelated third party websites make TABOCA snus lawfully sold in Norway and Sweden available for purchase anywhere in the world, theoretically including Delaware.  DI #3 ¶18.  The Complaint does not allege that

Taboca AS operates these third party sites, and it is obvious on the face of the Exhibits attached thereto that the websites are third party retailers that sell many other products besides TABOCA. *Id.*, *see also ante* n.2.  Philip Morris therefore is demanding that this Court exercise personal jurisdiction over Taboca AS based <u>solely</u> on the conduct of third parties over which it has no control, operating exclusively on the internet without any specific connection to Delaware.

The Third Circuit in *Toys R Us, Inc. v. Step Two*, S.A. 318 F.3d 446, 454 (3rd Cir. 2003) made it crystal clear that mere operation of an interactive commercial website is not a "minimum contact" sufficient to assert personal jurisdiction:

> [T]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world.  Rather, there must be evidence that the defendant "purposely availed" itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through other sufficiently related contacts.

Thus, even if Taboca AS operated the websites at issue (which the Complaint does not allege), it could not be sued in Delaware unless it made some intentional act to reach Delaware customers, as opposed to a worldwide internet audience.  *Id*.  The Complaint contains no such allegation, and cannot.  Taboca AS is not incorporated in Delaware, has no bricks-and-mortar presence of any kind in Delaware, has no employees in Delaware, has no suppliers in Delaware, is not aware that it has any sales in Delaware, and conducts no business of any kind in Delaware. As the Complaint alleges, it is a Norwegian company operating in Norway and Sweden.  Of course, Philip Morris's claim is far weaker because it is based on third party websites over which Taboca AS has no control, instead of Taboca AS's own website.[3]  Taboca AS cannot possibly be accused of "purposefully availing" itself of doing business in Delaware when it is unrelated third-party internet retailers that are conducting all the alleged business.  That of course assumes

---

[3] Taboca AS's website - www.taboca-as.com - is not mentioned in the Complaint.  Taboca AS's website is purely informational and not commercially interactive, i.e. it does not sell any products.

9

there is such business occurring in Delaware at all, a matter that the Complaint leaves solely to the imagination.

Though again not properly stated anywhere in the Complaint, Philip Morris appears to be attempting to assert general personal jurisdiction over Taboca AS via the Delaware long arm statute, 10 Del. C. 3104.[4]  However, "general jurisdiction may be exercised over a defendant whose contacts with the forum state are <u>continuous and substantial</u>."  *Parker,* 530 F. Supp. at 673 (emphasis added); *see also Provident Nat. Bank v. California Federal Sav. & Loan Ass'sn*, 819 F.2d 434, 436 (3rd Cir. 1987)("the plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction. The nonresident's contacts to the forum must be continuous and substantial.")(internal citation omitted).

The only possible basis for such "continuous and substantial" contacts found in the Complaint are allegations that Taboca AS has "profited from" selling TABOCA products in Delaware.  DI #3 ¶24.  But Third Circuit Courts have repeatedly held that only "revenue of two to three percent of total revenue is sufficient to confer personal jurisdiction."  *Parker*, 530 F. Supp. at 673.   No such allegation appears in the Complaint, and moreover, this Court has specifically held that a bald allegation that a defendant derives "substantial revenue" from Delaware is not adequate to secure personal jurisdiction.  *Parker,* 530 F. Supp. at 673-4.  Taboca AS is not aware of procuring any revenue at all from Delaware sales, let alone 2% of its total revenues, which come exclusively or nearly exclusively from Scandinavia.

Finally, even if there were by chance a few Delawareans who bought a can of snus on one of the alleged third party websites, that still would not create personal jurisdiction.  *See American Bio Medica Corp.*, 1999 WL 615175 at *2 ("The distinction between isolated business

---

[4] The Complaint is devoid of any allegation of a specific act, for example a trap sale, upon which specific personal jurisdiction might be based.  Taboca AS therefore assumes Plaintiff is attempting to assert general jurisdiction.

activities and those giving rise to personal jurisdiction has been explained on the basis of

whether the conduct is part of a general business plan ... to solicit business in Delaware and

deliver products to customers in Delaware.").  The acts of the worldwide internet resellers'

market, over which Taboca AS has no control and derives no revenue, cannot be termed "a

general business plan to solicit business in Delaware" that imposes personal jurisdiction.  *Id.*

     The Complaint therefore lacks any substantive allegation that would provide personal

jurisdiction over Taboca AS.

     **C.    This Court Lacks Subject Matter Jurisdiction Over Taboca AS's Scandinavian Business**

     The Complaint is an archetypical demand for extraterritorial application of the Lanham

Act, of the type routinely rejected by the Federal Courts as an overreaching insult to the laws and

sovereignty of foreign nations.  Put simply, Philip Morris demands that this Court rescind

Taboca AS's Norwegian and Swedish trademarks, because some third party *might* sell *legal*

Norwegian/Swedish goods on the internet, where some Delaware consumer *might* purchase them

and be confused.  Case law is unmistakably clear that the Federal Courts have no subject matter

jurisdiction to entertain such a demand.

     The United States Supreme Court in *Steele v. Bulova Watch Co.*, 340 U.S. 280 (1952)

established the three factors for determining subject matter jurisdiction under the Lanham Act for

extraterritorial acts.  The Third Circuit in *Scanvec Amiable, LTD v. Chang*, 80 Fed. Appx 171 at

*9 (3rd Cir. 2003)(unreported) recently restated the *Bulova* test:  "A proper invocation of

extraterritorial jurisdiction under the Lanham Act depends on 1) whether the defendant is a

United States Citizen, 2) conflicts between the defendant's trademark rights under foreign law

and the plaintiff's rights in the United States, and 3) whether the defendant's conduct has a

11

substantial or significant effect on domestic commerce."[5]

The seminal case on extraterritorial application of the Lanham Act in a subject matter jurisdiction in the context of a non-US defendant remains *Vanity Fair Mills, Inc. v. T. Eaton Co. LTD et al.*, 234 F. 2d 633 (2nd Cir. 1956)(emphasis added); *see also* Ved Nanda and David Pansius, 2 *Litigation of International Disputes in US Courts* §8:13 (2007)("Even today, the Second Circuit's decision in *Vanity Fair* … remains the leading case limiting *Bulova*.").  There the Second Circuit held:

> [W]e do not think that Congress intended that the infringement remedies provided in [Lanham Act] § 32(1) (a) and elsewhere should be applied to acts committed by a foreign national in his home country under a presumably valid trademark registration in that country….We conclude that <u>the remedies provided by the Lanham Act,</u> other than in § 44, <u>should not be given an extraterritorial application against foreign citizens acting under presumably valid trademarks in a foreign country.</u>

*Id.* at 641 (emphasis added).

It is undisputed that Taboca AS is a Norwegian company, not a U.S. citizen.  DI #3 ¶3. The only factors to be considered therefore are (a) the effect on US commerce of Taboca AS's use of lawful Scandinavian trademarks in Scandinavia, and (b) the extreme conflict of legal rights that would result if this Court answered Philip Morris's call to regulate Taboca AS's use of lawful Scandinavian trademarks in Scandinavia.  Both of these factors heavily favor a finding of no subject matter jurisdiction.

---

[5] The First Circuit in *McBee,* 417 F.3d at 110-11 recently decoupled the "conflict of legal rights" element from the *Bulova* jurisdictional analysis.  According to the *McBee* court, conflict of legal rights between US and foreign jurisdictions should be resolved in a separate comity analysis after consideration of the citizenship of the defendant and the degree of effect of the alleged infringement in the jurisdiction.  *Id.*  The Third Circuit seems never to have cited *McBee,* although it was cited once in the District of New Jersey for the unrelated proposition that a celebrity can file a trademark infringement suit for unauthorized use of his likeness.  *See Dorsey v. Black Pearl Books, Inc.*, 2006 WL 3327874 at *6 (D. N.J.)(unreported).  To the contrary, a Westlaw search reveals six Third Circuit and seven District of Delaware citations for *Vanity Fair*.  Of these, the one that seems to most expressly adopt the *Vanity Fair* analysis is the *Scanvec Amiable, LTD,* 80 Fed. Appx 171 at *9 case cited *ante*.  This analysis therefore follows *Vanity Fair*, but Taboca AS prevails under either test.

1.    **Taboca AS's Scandinavian Sales Have Zero Effect On US Commerce**

To form a basis for subject matter jurisdiction, Taboca AS's sales of TABOCA snus in Norway and Sweden would have to have a "substantial or significant effect on [US] domestic commerce". *Scanvec Amiable, LTD,* 80 Fed. Appx 171 at *9. The Third Circuit seems to follow the First, Second and Eleventh Circuit test (substantial), or the practically identical Fourth Circuit test (significant) for the gravity of the effect on US commerce, implying rejection of the more liberal Ninth Circuit (rule of reason) or Fifth Circuit's (some effect) tests. *McBee*, 417 F.3d at 120-1 ("substantial effect"); *Vanity Fair Mills*, 234 F.2d at 642; *Int'l Café, S.A.L.*, v. *Hard Rock Café Int'l (U.S.A.), Inc.*, 252 F.3d 1274, 1278-79(11th Cir. 2001) (applying *Vanity Fair*); *Nintendo of Am., Ltd.*, v. *Aeropower Co.*, 34 F.3d 246, 250-51 (4th Cir. 1994)(adopting the *Vanity Fair* test, although requiring a "significant effect" rather than a "substantial effect" on United States commerce); *Reebok Int'l, Ltd.* v. *Marnatech Enters., Inc.*, 970 F.2d 552, 554-57 (9th Cir. 1992) (applying the jurisdictional "rule of reason" from *Timberlane Lumber Co.* v. *Bank of Am.*, 549 F.2d 597 (9th Cir. 1977)); *Am. Rice, Inc.* v. *Ark. Rice Growers Coop. Ass'n*, 701 F.2d 408, 414 & n. 8 (5th Cir. 1983)(modifying *Vanity Fair*'s first prong to require only "some effect" on United States commerce).

The Complaint points to nothing - not one single purchase even by Plaintiff - to suggest sales of TABOCA snus in the US, let alone enough sales to have a "substantial or significant effect" on US commerce. This is because there is nothing to point to - Taboca AS does not run an internet business and does not sell to consumers outside its lawful retail markets in Scandinavia. Even though Taboca AS's website (www.taboca-as.com) is available for all to see, it is nowhere mentioned in the Complaint precisely because it is not commercially interactive and cannot be used by US consumers to procure TABOCA snus. This is eminently logical - the

13

Taboca family of companies are preparing to market snus in the US through Nordic American under different trademarks.  It would serve no purpose for Taboca AS to undercut Nordic American's snus brands by infringing on Philip Morris's US TABOKA mark.

This leaves only speculative allegations that third party websites *might* have resold TABOCA snus purchased lawfully in Scandinavia to some unknown person in the US at some unknown point.  First, purely speculative allegations can never survive a motion to dismiss, whether on subject matter jurisdiction or otherwise. *Bell Atlantic Corp. et al. v. Twombly et al.,* 127 S. Ct. 1955, 1965 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)")(internal citations and punctuation omitted).

Second, there is zero likelihood of Philip Morris being able to prove its allegations regarding the third party websites.  The third party websites are not named defendants, and Taboca AS has no information about them or means of getting any.  In this regard Philip Morris here is in a similar situation to the plaintiff in *McBee*.  In that case, the plaintiff alleged that infringing products were sold on the third party website eBay and therefore could find their way into the US market, providing a hook for subject matter jurisdiction.  *McBee*, 417 F.3d at 114. The First Circuit rejected this allegation as empty speculation, finding that sales on an international third party website like eBay do not imply US consumer confusion, because there is no non-speculative basis for assuming that such sales were consummated by US as opposed to

international buyers.  *Id.* at 125.[6]

### 2.    The Court Cannot Exercise Subject Matter Jurisdiction Without Trampling Taboca AS's Scandinavian Trademarks

It is public record that Taboca AS possesses valid Norwegian and Swedish registrations of the TABOCA mark, that were attained before Philip Morris filed for its confusingly similar TABOKA mark in the US.  Exhibit "A".  The obvious corollary to that fact is that Taboca AS has the exclusive right to market TABOCA products in Norway and Sweden.  It is undisputed that Philip Morris has the exclusive right to use the TABOKA mark in US commerce.  The question before the Court is how to reconcile these facts in the context of the worldwide market that is the internet.  The analysis is complicated by the fact that only alleged (speculative) internet sales at issue come not from Taboca AS directly, but from third parties over which it has no control.

Stripping away its empty equitable veneer, Philip Morris argues that if TABOCA snus sold legally in Norway can be placed on the internet for resale by unrelated third parties, and the internet is available to US consumers, then US courts must enjoin Taboca AS from selling its products in Norway or anywhere else in the world that can access the internet .  If this argument carried the day, then logically Taboca AS could sue Philip Morris in Norway seeking identical relief regarding the TABOKA mark, with the result that neither Philip Morris nor Taboca AS get to use their TABOCA/TABOKA marks.[7]  Both marks would be *de facto* invalidated by one foreign jurisdiction trumping another country's laws.

---

[6] The First Circuit specifically held that allegations of this type require specific pleading that "while the initial sales of the infringing goods may occur in foreign countries, the goods subsequently tend to enter the United States in some way and in substantial quantities."  *Id*. (emphasis added)  Trap sales initiated by the plaintiff of $2,500 worth of goods were deemed to be an insubstantial effect on US commerce and therefore no basis for jurisdiction.

[7] For example, a search on eBay for "TABOKA" at 6:22 p.m. EST on June 2, 2008 revealed TABOKA products available for worldwide sale, including in Scandinavia.  Exhibit "C".

ME1 7413430v.3

*Vanity Fair* specifically recognized and rejected the possibility of this bizarre holding. The *Vanity Fair* plaintiff held the US trademark VANITY FAIR, while the defendant held the identical Canadian trademark. *Vanity Fair Mills*, 234 F.2d at 638. Both parties themselves (not just third party resellers) engaged in cross-border trading through supply contracts and through mail order catalogues, the "internet" of the day. *Id.* However, as in the case at bar, any mail order cross-border sales were *de minimis* and the true dispute was an attempt by the plaintiff to assert a worldwide right to its VANITY FAIR trademark. In affirming the District Court's dismissal for lack of subject matter jurisdiction, the Second Circuit expressly held that "the Lanham Act … should not be given an extraterritorial application against foreign citizens acting under presumably valid trade-marks in a foreign country." *Id.* at 633. The *Vanity Fair* court found that, even with a showing of substantial effects on US commerce (the plaintiff's inability to procure contracts with Canadian retailers due to the conflicting Canadian trademark), extraterritorial application of the Lanham Act was impossible without at least one of the other two *Bulova* factors: US citizenship of the defendant and lack of conflict with foreign trademark law. *Id.* at 642-3. The Second Circuit also expressed the jurisdictional-conflict portion of its analysis as *forum non conveniens*, finding that it would have been impossible for the US courts to enforce rescission of the Canadian defendant's valid Canadian trademark, even with the few US mail order sales, and unwisely disrespectful of another country's sovereignty to even try:

> [W]e do not think a United States district court should take jurisdiction over [an] action turning on the validity or invalidity of defendant's Canadian trademark. In the first place, courts of one state are reluctant to impose liability upon a person who acts pursuant to a privilege conferred by the law of the place where the acts occurred. In the second place, it is well established that the courts of one state will not determine the validity of the acts of a foreign sovereign done within its borders. These precedents ha[d] not [yet] involved the acts of trademark officials in foreign countries, but their rationale would appear to extend to that situation.

*Id.* at 646-7 (internal citations and punctuation omitted).

16

Similarly in *Nintendo*, the Fourth Circuit vacated an injunction prohibiting a defendant from marketing infringing video games in Mexico and Canada because products sold in those countries had a high likelihood of entering the US and therefore a substantial effect on US commerce. *Nintendo of America, Inc.*, 34 F.3d 246. The Fourth Circuit held that such finding of substantial effect on US commerce is not enough - consideration of the conflict with Canadian and Mexican trademark law was also necessary. *Id.* at 251.

Again in *McBee*, the First Circuit rejected imposition of subject matter jurisdiction based on trap sales initiated by the plaintiff combined with third party resales of the foreign goods on the international website eBay. *McBee*, 417 F.3d at 125. The First Circuit held that such effects on US commerce were either *de minimis* or merely speculative, and therefore could not create subject matter jurisdiction over a Japanese trademark holder targeting its goods to a Japanese audience, despite the possibility of a few sales making their way to the US. *Id.*

There does not appear to be a reported Lanham Act case that has found trademark infringement liability where a foreign company was operating in a foreign country pursuant to its rights under a foreign trademark, even if some infringing goods incidentally entered US commerce. This case should not be the first to establish that illogical proposition.

> **D.    Taboca AS Is Not Liable For The Conduct Of Third Parties That Legally Purchase Its Products In Scandinavia And Resell Them On The Internet; The Complaint Therefore Fails To State A Claim For Which Relief Can Be Granted**

Without conceding personal or subject matter jurisdiction, the Complaint alternatively must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). To summarize the Complaint, Taboca AS is alleged to have done only three things: (1) challenged the TABOKA mark before the USPTO, (2) explored entering the US market by hiring executives and signing joint venture

17

agreements, and (3) "profited from" sales of TABOCA by third party retailers that buy

TABOCA legally in Scandinavia and then sell it worldwide via the internet.  These allegations

facially fail to state any claim for which relief can be granted.

> **1.    Allegations Unrelated To The Sale Of Goods Or Services Are Not Actionable**

The first two conduct allegations made by the Complaint - challenging the TABOKA

mark before the USPTO and hiring managers/entering joint venture agreements - are not

actionable under any standard.  It obviously was not illegal for Taboca AS to challenge the

TABOKA mark before the USPTO.  As the Complaint alleges, Taboca AS lost that challenge

because it had not yet taken sufficient steps to enter the US market to establish priority based on

its foreign TABOCA trade name and mark, not because Taboca AS engaged in some illegal act.

DI #3 ¶14.  The USPTO did not sanction Taboca AS for trying to defend its TABOCA mark, or

order it to pay Philip Morris's attorneys fees, or make any other statement that Taboca AS's

challenge was frivolous or actionable.

Nor is hiring an executive or entering a marketing agreement actionable under the

Lanham Act.  Such actions are incapable of creating consumer confusion - no provision of the

Lanham Act prevents the hiring of employees or signing an agreement to jointly market a yet-

unnamed future product.  *See* M. Elaine Buccieri, *Cause Of Action For Trademark Infringement*

*Under The Lanham Act*, 10 Causes of Action 2d 501 (2007)("The touchstone of liability is

whether the defendant's use of the disputed mark is likely to cause <u>confusion among consumers</u>

<u>as to the origin of the goods</u> or services offered by the parties. Stated another way, the question is

whether an appreciable number of reasonably prudent purchasers are likely to be misled or

confused as to the source or sponsorship of the goods and services.")(emphasis added); *see also*

*Amer. Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, n. 9 (3rd Cir.

ME1 7413430v.3

1994)("A claim of passing off generally focuses on customers' confusion, and involves comparison between the two products.")(emphasis added); *likewise Pernod Richard USA LLC*, 505 F. Supp. 2d at 255 ("[I]t simply does not follow that statements made about [a] trademark, which is not a good or service, state a claim for false advertising under [the Lanham Act].) (internal punctuation omitted).

These allegations appear to be in the Complaint only to pad the dearth of any non-speculative allegation related to sale of goods.

### 2.    The Complaint's Vague Allegations About Resale Of Goods By Unrelated Third Parties Also State No Cause Of Action

The entire Complaint therefore rests on the allegation that Taboca AS "profited from" the sale of goods by third party resellers on the internet.  DI #3 ¶24.  The imprecise language the Complaint uses to make this claim bears quoting:

> Indeed, upon information and belief, Defendants are selling TABOCA smokeless tobacco products to U.S. consumers, including within this district, in direct competition with Philip Morris USA's TABOKA smokeless tobacco products.  Specifically, upon further information and belief, U.S. consumers can purchase TABOCA smokeless tobacco products via Internet websites such as www.buysnus.com and www.notherner.com, among others, for delivery and use in the United States.

*Id.*[8]

What is most conspicuous about this paragraph is what is missing.  There is no mention of Taboca AS's own website, which is purely informational and cannot be used to purchase products.  There is no allegation of a "special relationship" such as actual or apparent authority between the two third-party websites and Taboca AS that could create vicarious liability for

---

[8] Though not germane to Taboca AS's defenses, it is worth noting that this paragraph begins with a falsehood.  Even if Taboca AS were selling goods in this District (Delaware), which it is not, such goods could not be "in direct competition with Philip Morris USA's TABOKA" product.  It has been widely publicized that Philip Morris was test marketing TABOKA exclusively in Indianapolis, Indiana.  Moreover, upon information and belief, Philip Morris has discontinued selling TABOKA anywhere, including Indianapolis.  Again, Philip Morris has drastically overreached in its allegations in a vain effort to bring this quintessentially Scandinavian matter to Delaware.

19

infringement.  Nor does the Complaint contain any claim for contributory infringement.  Instead,

Philip Morris alleges that Taboca AS is directly (not vicariously or contributorily) liable for

alleged infringement of third parties on the worldwide internet resale market, on the basis that

because the internet exists in Delaware some yet unspecified sale might occur in Delaware.

First, this is the exact sort of naked allegation of "I've got nothing, but give me some

discovery and maybe I'll find something" that the Supreme Court rejected in *Twombly et al.,* 127

S. Ct. at 1965.  There is no entitlement to take discovery, even jurisdictional discovery, on a

facially deficient complaint, or one that is purely speculative.  *Id*., *see also Ketterson,* 2001 WL

940909 at *4.

Second, the Complaint seeks to impose upon Taboca AS the duty to defend Philip

Morris's trademarks by policing the internet to insure that none of its legal Scandinavian

products are ever sold by third party retailers in the United States.  This argument has already

been rejected in the context of eBay, a website resale service that, unlike Taboca AS, actively

solicits and profits from the internet resale market.  *In Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d

1082, 1096 (C.D. Cal. 2001), the Central District of California rejected the plaintiff's demand

that eBay monitor its own website for sales that infringed on the plaintiff's trademark, holding:

> No authority supports Plaintiff's position. Indeed, such an injunction would effectively
> require eBay to monitor the millions of new advertisements posted on its website each
> day and determine, on its own, which of those advertisements infringe Plaintiff's Lanham
> Act rights. As the Court previously noted, no law currently imposes an affirmative duty
> on companies such as eBay to engage in such monitoring.  … eBay has no affirmative
> duty to monitor its own website for potential trade dress violation and Plaintiff had failed
> to put eBay on notice that particular advertisements violated his Lanham Act rights
> before filing suit.

*Id*. (internal citation and punctuation omitted).

It is Philip Morris's, not Taboca AS's, duty to police the internet for infringement of the

TABOKA mark.  This is logical because Taboca AS retains no title to its TABOCA products

20

once they are legally sold in Scandinavia, and therefore has no cause of action against an internet reseller. It would be grossly unfair (and impossible) to require Taboca AS to track every can of snus ever sold by an Oslo grocer to ensure that it does not find its way onto eBay. The Complaint points to no provision of the Lanham Act requiring such an absurd result.

Third, the Complaint contains no allegation whatsoever of vicarious liability for the third party websites, either through contributory infringement under the Lanham Act or through common law theories such as agency. These claims must be pled in the Complaint or they are waived. *See e.g. Proctor & Gamble, Co. v. Haugen*, 317 F.3d 1121, 1129 (10th Cir. Jan. 6, 2003)(contributory infringement has its own specific elements and cannot be pled via a conclusory statement such as "implied approval".).

### 3.       The Complaint Was Filed For An Improper Purpose

The Court should recognize this Complaint for what it is. Philip Morris cannot possibly be concerned with the *de minimis* actions of third party internet resellers of Taboca AS's legal Scandinavian products, any more than Taboca AS is concerned that TABOKA products are sold on eBay and might thereby end up in Scandinavia. This is especially true because Philip Morris has discontinued the TABOKA product line and is not even using the mark at issue. Nor can Philip Morris honestly believe that Taboca AS has the capability to track every can of snus it sells in Norway, anymore than Philip Morris can track every pack of Marlboros sold in Indiana. Nor can Philip Morris sincerely expect Taboca AS to engage personnel to do nothing but troll the internet all day in search of third party resellers to complain about, especially when Taboca AS has no legal basis to stop their resale activities.

There are only two possible explanations for the filing of this Complaint. The first is that Philip Morris is improperly attacking Taboca AS's Scandinavian business; Philip Morris could

be seeking to use the Lanham Act to impose a worldwide right to its TABOKA mark that would *de facto* rescind Taboca AS's valid Norwegian and Swedish trademarks. *Vanity Fair* specifically recognized that the Lanham Act does not support such a cause of action. *Vanity Fair Mills*, 234 F.2d at 642. Philip Morris's claims to this end have no legal basis and therefore are frivolous.

The other possibility is that Philip Morris simply is making life difficult for a smaller international competitor attempting to enter its home market, through the imposition of expensive, frivolous litigation. Fed. R. 12(b)(6) is designed to end such litigation before it has its intended *in terrorem* effect. *Twombly*, 127 S. Ct. at 1959 (Rule 12(b)(6) dismissal "serves the practical purpose of preventing a plaintiff with a largely groundless claim from taking up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.")(internal punctuation omitted).

## V.  CONCLUSION

For the foregoing reasons, Taboca AS respectfully requests that this Court dismiss

Plaintiff's Complaint with prejudice.

Respectfully submitted,


/s/ Andrew S. Dupre
David A. White (ID No. 2644)
dwhite@mccarter.com
Andrew S. Dupre (ID No. 4621)
adupre@mccarter.com
Theodore W. Annos (ID No. 4823)
tannos@mccarter.com

MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street
8th Floor
Wilmington, DE  19801

302-984-6300 - Telephone
302-984-6399 - Facsimile

Attorneys for Defendant Taboca AS

Date:  June 4, 2008

ME1 7413430v.3

## CERTIFICATE OF SERVICE

I, Andrew S. Dupre, attorney for Taboca AS, hereby certify that on June 4, 2008, a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT TABOCA AS's MOTION TO DISMISS PLAINTIFF'S COMPLAINT** was served via CM/ECF electronic noticing upon all counsel of record.

/s/ Andrew S. Dupre
Andrew S. Dupre (ID No. 4621)

Date:  June 4, 2008

24

# EXHIBIT A



# KONUNGARIKET SVERIGE

## VARUMÄRKE NUMMER 374929

### TABOCA

Varumärkesansökan nummer 2005/01069 ingavs 2005-02-14 och registrerades 2005-09-16 under nummer 374929. Publiceringsdag 2005-09-16.

Patent- och registreringsverket intygar härmed att ovan avbildade varumärke är infört i varumärkesregistret med omstående uppgifter.

Patent- och registreringsverket 2005-09-16

*Gun Hellsvik*

Generaldirektör

VARUMÄRKE NUMMER     2005/01069                                    2(2)

Katarina Hall, Hamilton & Co
Advokatbyrå
Box 715
101 33 STOCKHOLM

Innehavare:         Taboca AS, Bygdøy Allé 1, 0201  OSLO, Norge.

Ombud:              Katarina Hall, Hamilton & Co Advokatbyrå, Box 715, 101 33
                    STOCKHOLM, Sverige.

**Varor och tjänster:**

**16:** Papper, kartong (papp), plastemballage och produkter
tillverkade därav, samt trycksaker.
**34:** Tobaksprodukter, innefattande snus.



# KONUNGARIKET SVERIGE

## VARUMÄRKE NUMMER 374930



Varumärkesansökan nummer 2005/01070 ingavs 2005-02-14 och registrerades 2005-09-16 under
nummer 374930. Publiceringsdag 2005-09-16.

Patent- och registreringsverket intygar härmed att ovan avbildade varumärke är infört i
varumärkesregistret med omstående uppgifter.

Patent- och registreringsverket 2005-09-16

*Gun Hellsvik*

Generaldirektör

VARUMÄRKE NUMMER      2005/01070                                    2(2)

Katarina Hall, Hamilton & Co
Advokatbyrå
Box 715
101 33 STOCKHOLM

Innehavare:           Taboca AS, Bygdøy Allé 1, 0201 OSLO, Norge.

Ombud:                Katarina Hall, Hamilton & Co Advokatbyrå, Box 715, 101 33
                      STOCKHOLM, Sverige.

Figurklass:           05.03.13; 26.01.12.
Prioritet:            Begärd från Norge, 2005-01-05, nr 200500766, Alla klasser.

**Varor och tjänster:**

**16:** Papper, kartong (papp), plastemballage och produkter tillverkade därav, samt trycksaker.
**34:** Tobaksprodukter, innefattande snus.



KONGERIKET NORGE
The Kingdom of Norway



# Varemerkereg.nr.: 226466
*Registered Trademark No.*

I henhold til varemerkeloven av 3. mars 1961 er Deres varemerke
registrert med de opplysninger som angitt på etterfølgende sider.

The enclosed trademark has been registered with the Norwegian
Patent Office in accordance with the Trademarks Act of
3 March 1961.

--------------------
*Jørgen Smith*
*direktør*



# Registrerte opplysninger
## (Registered data)

| | | |
|---|---|---|
| (111) | Reg.nr: | 226466 |
| (151) | Reg.dato: | 2005.04.25 |
| (300) | Prioritet: | Ingen |
| (210) | Søknadsnr: | 200404340 |
| (220) | Inndato: | 2004.04.27 |
| (180) | Registreringsperioden utløper: | 2015.04.25 |

(540)   Gjengivelse av merket:
TABOCA

(541)   Merket er et ordmerke i standard font.

(571)   Beskrivelse av merket: TABOCA

(730)   Innehaver(e):
Taboca AS, Bygdøy Allé 1, 0201 OSLO, NO

(740)
(750)   Advokatfirma Seland Blikom & Co DA, Postboks 1938 Vika, 0125 OSLO, NO

(511)   Varer og/eller tjenester:
16      Papir, papp, plastemballasje og varer laget av disse materialer, samt trykksaker.
34      Tobakksprodukter, herunder snus.



KONGERIKET NORGE
The Kingdom of Norway



Varemerkereg.nr.: 226464
*Registered Trademark No.*

I henhold til varemerkeloven av 3. mars 1961 er Deres varemerke
registrert med de opplysninger som angitt på etterfølgende sider.

The enclosed trademark has been registered with the Norwegian
Patent Office in accordance with the Trademarks Act of
3 March 1961.

—————————————————
*Jørgen Smith*
*direktør*



# Registrerte opplysninger
## (Registered data)

(111)     Reg.nr:              226464
(151)     Reg.dato:            2005.04.25
(300)     Prioritet:           Ingen
(210)     Søknadsnr:           200404336
(220)     Inndato:             2004.04.27
(180)     Registreringsperioden
          utløper:             2015.04.25

(540)     Gjengivelse av merket:



(546)     Merket er et kombinert merke.

(571)     Beskrivelse av merket:  taboca

(730)     Innehaver(e):
          Taboca AS, Bygdøy Allè 1, 0201 OSLO, NO

(740)     Fullmektig:
(750)     Advokatfirma Seland Blikom & Co DA , Postboks 1938 Vika, 0125 OSLO, NO

(511)     Varer og/eller tjenester:
          16      Papir, papp, plastemballasje og varer laget av disse materialer, samt trykksaker.
          34      Tobakksprodukter, herunder snus.

# EXHIBIT B

Latest Status Info

Thank you for your request. Here are the latest results from the TARR web server.

This page was generated by the TARR system on 2008-04-15 12:19:31 ET

**Serial Number:** 77183018 Assignment Information        Trademark Document Retrieval

**Registration Number:** (NOT AVAILABLE)

**Mark**

# KLONDIKE

**(words only):** KLONDIKE

**Standard Character claim:** Yes

**Current Status:** Opposition period completed, a Notice of Allowance has been issued.

**Date of Status:** 2008-01-29

**Filing Date:** 2007-05-16

**Filed as TEAS Plus Application:** Yes

**Currently TEAS Plus Application:** Yes

**The Notice of Allowance Date is:** 2008-01-29

**Transformed into a National Application:** No

**Registration Date:** (DATE NOT AVAILABLE)

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 106

**Attorney Assigned:**
GUTTADAURO JULIE MARIE

**Current Location:** 700 -Intent To Use Section

**Date In Location:** 2008-01-29

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. NORDIC AMERICAN SMOKELESS INC.

**Address:**
NORDIC AMERICAN SMOKELESS INC.
100 MILL PLAIN ROAD
DANBURY, CT 06811
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Delaware

---

## GOODS AND/OR SERVICES

---

**International Class:** 034
**Class Status:** Active
Chewing tobacco; Smokeless tobacco
**Basis:** 1(b)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

---

## ADDITIONAL INFORMATION

---

(NOT AVAILABLE)

---

## MADRID PROTOCOL INFORMATION

---

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

---

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2008-02-06 - Automatic Update Of Assignment Of Ownership

2008-01-29 - Notice of allowance - mailed

2007-11-06 - Published for opposition

2007-10-17 - Notice of publication

2007-10-03 - Law Office Publication Review Completed

2007-10-03 - Assigned To LIE

2007-09-04 - Approved for Pub - Principal Register (Initial exam)

2007-08-28 - Assigned To Examiner

2007-05-21 - New Application Entered In Tram

---

## ATTORNEY/CORRESPONDENT INFORMATION

---

http://tarr.uspto.gov/tarr?regser=serial&entry=77183018                    4/15/2008

**Attorney of Record**
Mark D. Giarratana, Esq.

**Correspondent**
MARK D. GIARRATANA, ESQ.
MCCARTER & ENGLISH, LLP
185 ASYLUM ST FL 36
HARTFORD, CT 06103-3495
Phone Number: 860-275-6700
Fax Number: 860-724-3397

Thank you for your request. Here are the latest results from the TARR web server.

This page was generated by the TARR system on 2008-04-15 12:19:56 ET

Serial Number: 77182998 Assignment Information          Trademark Document Retrieval

Registration Number: (NOT AVAILABLE)

Mark

# NORDIC ICE

(words only): NORDIC ICE

Standard Character claim: Yes

Current Status: Opposition period completed, a Notice of Allowance has been issued.

Date of Status: 2008-01-29

Filing Date: 2007-05-16

Filed as TEAS Plus Application: Yes

Currently TEAS Plus Application: Yes

The Notice of Allowance Date is: 2008-01-29

Transformed into a National Application: No

Registration Date: (DATE NOT AVAILABLE)

Register: Principal

Law Office Assigned: LAW OFFICE 106

Attorney Assigned:
GUTTADAURO JULIE MARIE

Current Location: 700 -Intent To Use Section

Date In Location: 2008-01-29

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. NORDIC AMERICAN SMOKELESS INC.

**Address:**
NORDIC AMERICAN SMOKELESS INC.
100 MILL PLAIN ROAD
DANBURY, CT 06811
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Delaware

---

## GOODS AND/OR SERVICES

---

**International Class:** 034
**Class Status:** Active
Chewing tobacco; Smokeless tobacco
**Basis:** 1(b)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

---

## ADDITIONAL INFORMATION

---

(NOT AVAILABLE)

---

## MADRID PROTOCOL INFORMATION

---

**USPTO Reference Number:** A0011934
**International Registration Number:** (NOT AVAILABLE)
**International Registration Date:** (DATE NOT AVAILABLE)
**Original Filing Date with USPTO:** 2008-04-01
**International Registration Status:** Application For Intl Registration Automatically Certified
**Date of International Registration Status:** 2008-04-01
**International Registration Renewal Date:** (DATE NOT AVAILABLE)
**Irregularity Reply by Date:** (DATE NOT AVAILABLE)

**Madrid History:**
04-01-2008 - 21:01:15 - IR Certified And Sent To IB
04-01-2008 - 16:21:58 - New Application For IR Received
04-01-2008 - 16:21:58 - Automatically Certified

---

## PROSECUTION HISTORY

---

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval"
shown near the top of this page.**

2008-02-06 - Automatic Update Of Assignment Of Ownership

2008-01-29 - Notice of allowance - mailed

2007-11-06 - Published for opposition

2007-10-17 - Notice of publication

Latest Status Info

2007-10-03 - Law Office Publication Review Completed

2007-10-03 - Assigned To LIE

2007-09-04 - Approved for Pub - Principal Register (Initial exam)

2007-08-28 - Assigned To Examiner

2007-05-21 - New Application Entered In Tram

---

## ATTORNEY/CORRESPONDENT INFORMATION

---

**Attorney of Record**
Mark D. Giarratana, Esq.

**Correspondent**
MARK D. GIARRATANA, ESQ.
MCCARTER & ENGLISH, LLP
185 ASYLUM ST FL 36
HARTFORD, CT 06103-3495
Phone Number: 860-275-6700
Fax Number: 860-724-3397

---

Latest Status Info

Thank you for your request. Here are the latest results from the <u>TARR web server</u>.

This page was generated by the TARR system on 2008-04-15 12:19:07 ET

Serial Number: 77183009 <u>Assignment Information</u>        <u>Trademark Document Retrieval</u>

Registration Number: (NOT AVAILABLE)

Mark

# BONANZA

(words only): BONANZA

Standard Character claim: Yes

Current Status: Opposition period completed, a Notice of Allowance has been issued.

Date of Status: 2008-01-29

Filing Date: 2007-05-16

Filed as TEAS Plus Application: Yes

Currently TEAS Plus Application: Yes

The Notice of Allowance Date is: 2008-01-29

Transformed into a National Application: No

Registration Date: (DATE NOT AVAILABLE)

Register: Principal

Law Office Assigned: LAW OFFICE 106

Attorney Assigned:
GUTTADAURO JULIE MARIE

Current Location: 700 -Intent To Use Section

Date In Location: 2008-01-29

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

---

1. NORDIC AMERICAN SMOKELESS INC.

**Address:**
NORDIC AMERICAN SMOKELESS INC.
100 MILL PLAIN ROAD
DANBURY, CT 06811
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Delaware

---

## GOODS AND/OR SERVICES

---

**International Class:** 034
**Class Status:** Active
Chewing tobacco; Smokeless tobacco
**Basis:** 1(b)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

---

## ADDITIONAL INFORMATION

---

(NOT AVAILABLE)

---

## MADRID PROTOCOL INFORMATION

---

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

---

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2008-02-06 - Automatic Update Of Assignment Of Ownership

2008-01-29 - Notice of allowance - mailed

2007-11-06 - Published for opposition

2007-10-17 - Notice of publication

2007-10-03 - Law Office Publication Review Completed

2007-10-03 - Assigned To LIE

2007-09-04 - Approved for Pub - Principal Register (Initial exam)

2007-08-28 - Assigned To Examiner

2007-05-21 - New Application Entered In Tram

---

## ATTORNEY/CORRESPONDENT INFORMATION

---

**Attorney of Record**
Mark D. Giarratana, Esq.

**Correspondent**
MARK D. GIARRATANA, ESQ.
MCCARTER & ENGLISH, LLP
185 ASYLUM ST FL 36
HARTFORD, CT 06103-3495
Phone Number: 860-275-6700
Fax Number: 860-724-3397

Latest Status Info

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2008-04-15 12:19:44 ET

**Serial Number:** 77182992 Assignment Information      Trademark Document Retrieval

**Registration Number:** (NOT AVAILABLE)

**Mark**

# FREEBIRD

**(words only):** FREEBIRD

**Standard Character claim:** Yes

**Current Status:** Opposition period completed, a Notice of Allowance has been issued.

**Date of Status:** 2008-01-29

**Filing Date:** 2007-05-16

**Filed as TEAS Plus Application:** Yes

**Currently TEAS Plus Application:** Yes

**The Notice of Allowance Date is:** 2008-01-29

**Transformed into a National Application:** No

**Registration Date:** (DATE NOT AVAILABLE)

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 106

**Attorney Assigned:**
GUTTADAURO JULIE MARIE

**Current Location:** 700 -Intent To Use Section

**Date In Location:** 2008-01-29

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. NORDIC AMERICAN SMOKELESS INC.

**Address:**
NORDIC AMERICAN SMOKELESS INC.
100 MILL PLAIN ROAD
DANBURY, CT 06811
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Delaware

---

## GOODS AND/OR SERVICES

---

**International Class:** 034
**Class Status:** Active
Chewing tobacco; Smokeless tobacco
**Basis:** 1(b)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

---

## ADDITIONAL INFORMATION

---

(NOT AVAILABLE)

---

## MADRID PROTOCOL INFORMATION

---

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

---

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2008-02-06 - Automatic Update Of Assignment Of Ownership

2008-01-29 - Notice of allowance - mailed

2007-11-06 - Published for opposition

2007-10-17 - Notice of publication

2007-10-03 - Law Office Publication Review Completed

2007-10-03 - Assigned To LIE

2007-09-04 - Approved for Pub - Principal Register (Initial exam)

2007-08-28 - Assigned To Examiner

2007-05-22 - Notice Of Pseudo Mark Mailed

2007-05-21 - New Application Entered In Tram

---

## ATTORNEY/CORRESPONDENT INFORMATION

**Attorney of Record**
Mark D. Giarratana, Esq.

**Correspondent**
MARK D. GIARRATANA, ESQ.
MCCARTER & ENGLISH, LLP
185 ASYLUM ST FL 36
HARTFORD, CT 06103-3495
Phone Number: 860-275-6700
Fax Number: 860-724-3397

Thank you for your request. Here are the latest results from the TARR web server.

This page was generated by the TARR system on 2008-04-15 12:20:08 ET

Serial Number: 77183002 Assignment Information      Trademark Document Retrieval

Registration Number: (NOT AVAILABLE)

Mark

# NORDIC SNUS

(words only): NORDIC SNUS

Standard Character claim: Yes

Current Status: Abandoned-Failure To Respond Or Late Response

Date of Status: 2008-04-03

Filing Date: 2007-05-16

Filed as TEAS Plus Application: Yes

Currently TEAS Plus Application: No

Transformed into a National Application: No

Registration Date: (DATE NOT AVAILABLE)

Register: Principal

Law Office Assigned: LAW OFFICE 106

If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov

Current Location: L6X -TMEG Law Office 106 - Examining Attorney Assigned

Date In Location: 2008-04-03

---
## LAST APPLICANT(S)/OWNER(S) OF RECORD
---

1. NORDIC AMERICAN SMOKELESS INC.

Address:
NORDIC AMERICAN SMOKELESS INC.

100 MILL PLAIN ROAD
DANBURY, CT 06811
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Delaware

---

## GOODS AND/OR SERVICES

**International Class:** 034
**Class Status:** Partially Paid
Chewing tobacco; Smokeless tobacco
**Basis:** 1(b)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

---

## ADDITIONAL INFORMATION

(NOT AVAILABLE)

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2008-04-03 - Abandonment Notice Mailed - Failure To Respond

2008-04-03 - Abandonment - Failure To Respond Or Late Response

2008-02-06 - Automatic Update Of Assignment Of Ownership

2007-09-05 - Notification Of Non-Final Action E-Mailed

2007-09-05 - Non-final action e-mailed

2007-09-05 - Non-Final Action Written

2007-09-05 - Removed From TEAS Plus

2007-09-05 - Restore To TEAS Plus

2007-09-05 - Removed From TEAS Plus

2007-08-28 - Assigned To Examiner

2007-05-21 - New Application Entered In Tram

---

## ATTORNEY/CORRESPONDENT INFORMATION

**Attorney of Record**
Mark D. Giarratana, Esq.

**Correspondent**
MARK D. GIARRATANA, ESQ.
MCCARTER & ENGLISH, LLP
185 ASYLUM ST FL 36
HARTFORD, CT 06103-3495
Phone Number: 860-275-6700
Fax Number: 860-724-3397

# EXHIBIT C



Search | Advanced Search    **Buy** | **Sell** | **My eBay** | **Community** | **Help**

Sign in

Site Map

**Categories ▼**   **Motors**   **Express**   **Stores**

eBay Security & Resolution Center

⬅ Back to list of items    Listed in category: Collectibles > Tobacciana > Tins

# 20 DISCONTINUED LIMITED EDITION TABOKA COLLECTOR PACKS.

Item number: 310055650998

Seller of this item? Sign in for your status

Watch this item in My eBay



View larger picture

| | |
|---|---|
| Starting bid: | **US $0.99** |
| Your maximum bid: | **US $** [____] Place Bid > |
| | (Enter US $0.99 or more) |
| End time: | **Jun-08-08 11:29:07 PDT** (5 days 20 hours) |
| Shipping costs: | **US $6.60** US Postal Service Priority Mail® Service to 19801, United States (more services) |
| Ships to: | United States |
| Item location: | Kokomo, Indiana, United States |
| Quantity: | 1 lot available (20 items each) |
| Cost per item: | US $0.05 each (Not sold individually) |
| History: | 0 bids |
| You can also: | Watch This Item |
| | Get SMS or IM alerts \| Email to a friend |

### Meet the seller

| | |
|---|---|
| Seller: | alanb3448 ( |
| Feedback: | **98.4 % Pos** |
| Member: | since Aug-0 United State |

🔲 See detailed feedba
🔲 Ask seller a questio
🔲 Add to Favorite Sell
🔲 **View seller's other**

### Buy safely

1. **Check the seller's** Score: 378 | 98.4% See detailed feedba
2. **Check how you're**

**PayPal** Up to $2 buyer pr See eligi

Listing and payment details:   **Show**

# Description

*Item Specifics - Item Condition*
Condition:        **New**

Product Type :   **Cases**          Product+Type :   **Boxes**
Theme :          **Tobacco+Tin**    Brand :          **Taboka**



FREE
auctiva
Increase traffic to your listings with Auctiva's FREE Showcase

# 20 DISCONTINUED LIMITED EDITION TABOKA COLLECTOR PACKS.

## Description

*LIMITED EDITON TABOKA PACKS.*

*ISSUED IN ONLY 3 STATES,THEN*

*DISCONTINUED.RARE COLLECTORS ITEM.*

*ALL NEW IN  MANUFACTURES PACKAGING*

*MUST BE 18 + YEARS OLD,TO BID!*

## *THIS IS A SMOKELESS*

## *TOBACCO PRODUCT.THE U.S.*

# *SURGEON GENERAL HAS DETERMINED*

## *THAT SMOKELESS TOBACCO PRODUCTS*

## *ARE ADDICTIVE AND CAUSE SERIOUS*

## *DISEASES.*

## *SHIP TO THE U.S.A. ONLY!*

View My Other Items For Sale











*Payment*

*Payment is due within 5 business days.If payment is not received,we follow ebays non-paying bidder policy.Non-payment dispute will be opened,and negative feedback will be left.Please do not bid if you do not intend to pay.Thank you!*

Case 1:08-cv-00028-SLR    Document 16-2    Filed 06/04/2008    Page 32 of 35

## Shipping

*We ship worldwide. We are not responsible for shipping damages, lost packages, or slow delivery times. We always ship within 1 business day of receiving payment. Thank you!*

## Terms of Sale

*Must have feedback score of 5 or higher to bid on our items. All bidders with 4 feedback or lower will be removed from auction and put on the blocked bidder list. All items sold as is, no refunds or returns. Feedback is left, when feedback is received. Thank you!*

## About Us

*We specialize in vintage, hard to find items and much more. We pride ourselves in fast shipping, quality items, great communication. Excellent customer service and satisfaction. Thank you, Alan and Tracy!*

## Contact Us

*If you have any questions or concerns, before bidding, during, or after sale ends, please feel free to contact us through ebay my messages. Thank you!*

Unlimited Image Hosting –
Free from Auctiva.

Improve your auctions with
Auctiva's Free templates.



The only SIMPLE & FREE selling
solution for eBay sellers



Click here to see my other items, ranked by popularity!



Thanks for
looking!

What's your Credit Score? 720? 650? Find Out From Experian.

## Shipping and handling

**Save on shipping.** This seller offers shipping discounts on combined purchases.

**Ships to**
United States

| Country: United States | Zip or postal code: 19801 | Update |
| --- | --- | --- |

| Shipping and Handling | To | Service | Insurance |
| --- | --- | --- | --- |
| US $6.60 | 19801, United States | US Postal Service Priority Mail® Estimated delivery 2-3 days* | US $1.70 Optional |
| US $6.35 | 19801, United States | US Postal Service Parcel Post® | US $1.70 Optional |

| | | | |
|---|---|---|---|
| | | Estimated delivery 2-9 days* | |
| US $25.65 | 19801, United States | US Postal Service Express Mail® Overnight to many areas* | Included in S&H |

*Sellers are not responsible for service transit time. This information is provided by the carrier and excludes weekends and holidays. Note that transit times may vary, particularly during peak periods.

**Domestic handling time**
Will usually ship within 1 business day of <u>receiving cleared payment</u>.

## Return policy

Return policy not specified.
Read item description for any reference to return policy.

## Payment details

| **Payment method** | **Preferred/Accepted** | **Buyer protection on eBay** |
|---|---|---|
|  | **Seller Preferred** | *PayPal* **Up to $2,000** in buyer protection. <u>See eligibility</u> |
| Money order/Cashiers check | Accepted | Not Available |

<u>Learn about payment methods</u>

**Seller's payment instructions**
Payment must be paid within 5 business days,or item will be relisted.Feedback will be left when feedback is received.Thank you!

## Take action on this item                                                                    <u>Help</u>

Item title: **20 DISCONTINUED LIMITED EDITION TABOKA COLLECTOR PACKS.**

| **Place a bid** |
|---|
| Starting bid:     **US $0.99** |
| Your maximum bid:US $ [            ]    (Enter US $0.99 **or more**) |

**Place Bid >**       You will confirm in the next step.

eBay automatically bids on your behalf **up to** your maximum bid. Learn about bidding.

## Other options

Back to list of items  |  Report this item  |  Printer Version  |  Sell one like this

Seller assumes all responsibility for listing this item.

eBay Pulse | eBay Reviews | eBay Stores | eBay Express | Reseller Marketplace | Austria | France | Germany | Italy | Spain |
United Kingdom | Popular Searches
Half.com | Tickets | Kijiji | PayPal | ProStores | Apartments for Rent | Shopping.com | Skype

About eBay | Announcements | Security Center | eBay Toolbar | Policies | Government Relations | Site Map | Help

Copyright © 1995-2008 eBay Inc. All Rights Reserved. Designated trademarks and brands are the property of their respective owners. Use of this Web site constitutes acceptance of the eBay User Agreement and Privacy Policy.

eBay official time